UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
JOSH WEBBER and                              ) 19-CV-610-CM
MUDDY WATER PICTURES LLC d/b/a               )
MUDDY WATER PICTURES, INC.                   ) MEMORANDUM OF
       Plaintiffs                       ) OF LAW IN SUPPORT
v.                                           ) OF MUDDY WATER
                                             ) PICTURES LLC D/B/A
DAMON ANTHONY DASH and                       ) MUDDY WATER PICTURES,INC.
POPPINGTON LLC D/B/A DAMON DASH               ) MOTION FOR SUMMARY
STUDIOS                                      ) JUDGMENT IN REGARDS
       Defendants                       ) TO OWNERSHIP AND
_____) AUTHORSHIP

                                       JOSH WEBBER and
                                       MUDDY WATER PICTURES LLC  d/b/a
                                     MUDDY WATER PICTURES, INC.
                                     By Their Attorneys,

                                   /s/ Christopher Brown
                                   Christopher Brown
                                   CB3465
                                   Brown & Rosen LLC
                                   Attorneys At Law
                                   100 State Street, Suite 900
                                   Boston, MA 02109
                                   617-728-9111 (T)
Dated: March 17, 2019                 cbrown@brownrosen.com

## Table of Contents

| | |
|---|---|
| **I. Introduction** | 4 |
| **II. Facts** | 4 |
| **III. Argument** | 7 |
| **1. Plaintiff's Motion For Summary Judgment Must Be Granted Because Muddy Is The Owner And Dominate Author of the Film** | 7 |
| **2. Muddy Is The Sole Owner Pursuant To The Registered Copyright** | 8 |
| **3. Dash's Claims Of Being A Joint-Author Is Unsupported By the Facts** | 9 |
| **4. Muddy Did Not Intend To Be Joint –Authors with Dash** | 10 |
| **5. The Alleged Oral Contract Is Unenforceable Under The Statute Of Frauds** | 13 |
| **IV. Conclusion** | 15 |

## Cases Cited

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)     7

Ashton-Tate Corp. v. Ross, 916 F.2d 516, 521 (9th Cir. 1990)     9

Caffey v. Cook, 409 F. Supp. 2d 484 (S.D.N.Y. 2006)     9

Carol Barnhart Inc. v. Economy Cover Corp.,
773 F.2d 411 (2d Cir. 1985)     9

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)     8

Childress v. Taylor, 945 F.2d 500 (2d Cir. 1991)     9

Estate of Burne Hogarth v. Edgar Rice Burroughs Inc., 342 F.3d 149 (2d Cir. 2003)     9

Fonar Corp. v. Domenick, 105 F.3d 99 (2d Cir. 1997)     9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 485 U.S. 574 (1986)     7

Thomson v. Larson, 147 F.3d 195 (2d Cir. 1998)     9

16 Casa Duse LLC, v. Alex Merkin, et al, 12-Cv- 3492
(S.D.N.Y,Order dated September 20, 2013)     10,11,12,14

# I. INTRODUCTION

The Plaintiff Muddy Water Pictures LLC d/b/a Muddy Water Pictures, Inc.("Muddy") files the instant Memorandum Of Law in Support of its Motion for Summary Judgment seeking and Order that Muddy is the exclusive owner and author of the film Dear Frank a/k/a "The List". Defendants Damon Anthony Dash and Poppington LLC d/b/a Damon Dash Studios ("Dash") has no rights to the film and the facts demand that Muddy be granted summary judgment.

# II. FACTS

1. In 2016, Muddy begin the shoot the film "The List" a/k/a "Dear Frank" ("film"). See Affidavit of Abdullah Muntaser, Docket No 35, paragraph 2.

2. Muddy hired Webber to be a director on the film. See Affidavit of Abdullah Muntaser, Docket No. 35, paragraph 3.

3. Webber is also the director of the film "Never Heard" starring, Robin Givens, Romeo Miller, David Banner, Kandi Burress, Karrueche Tran and others, which was theatrically released in 2018. See Affidavit of Josh Webber, Docket No. 36, paragraph 4.

4. Muddy intended to work with Dash and give him credit for direction in return for the use of his celebrity associated with the film. Muddy and Dash were unable to reach terms associated with his involvement with the project. The parties could not reach an agreement on terms and no contract was executed. See Affidavit of Abdullah Muntaser, Docket No. 35, paragraph 4.

5.      Muddy utilized the property located 3624 Glenridge Drive, Sherman Oaks, CA 91423 ("property") to shoot the film. Affidavit of Josh Webber, Docket No. 36, paragraph 6.

6.      The property was owned by Sherwin Isaac Aryeh ("Aryeh"). Aryeh authorized the use of the property for the commercial purposes. Dash was a tenant. See Affidavit of Abdullah Muntaser. Id.

7.      The film was shot in various locations. The locations are as follows (1) 3624 Genridge Drive, Sherman Oaks, CA 91423  (2)  Inglewood Mortuary, 1206 Centinela Ave.,  Inglewood, CA  (3) a film studio (LA Grip Studios)  in Los Angeles, California 4712 West Magnolia Blvd, Burbank, CA 91505  (4) a restaurant named Halal Kitchen Cafe located at 18112 Parthenia Street  Northridge CA, 91325. See Affidavit of Josh Webber, Docket No. 36, paragraph 7.

8.      During principal photography, Dash was on site (his residence was the location of the shoot) but did not provide substantially material services.  Dash was routinely high/inebriated on marijuana, belligerent and aggressive towards the crew and cast. On other occasions, Dash was passed-out during principal photography. See Affidavit of Josh Webber, Docket No. 36, paragraph 8.

9.      While on set at 3624 Genridge Drive, Sherman Oaks, CA 91423, Plaintiffs have video footage of Dash being high/inebriated on marijuana and laying down in lawn chairs while the production was moving forward. Id. at paragraph 9.

10.     Despite being on set (as the set was his home), Dash did not materially perform services and the directing was performed by others. Id at paragraph 10.

11.     All the contracts with the cast and crew are signed and executed with Muddy or for the benefit of Muddy. Muddy paid the cast, crew and production. Muddy paid in excess of Two Hundred Thousand Dollars ($200,000.00) to produce and complete the film including payments to the cast and crew. See Affidavit of Abdullah Muntaser, Docket No. 35, paragraph 8.

12.     Muddy paid for the production of the film (Dash paid for nothing) and registered the motion picture with the United States Copyright Office, registration number PAu003842822. Exhibit B to the Complaint.

13.     Muddy has been seeking distribution for the film since post production was completed in 2018, after previously terminating any association with Dash. See Exhibit C To Complaint.

14.     Dash is not an owner of the copyright for the film and is marketing the film as his own as "Damon Dash Presents". See Exhibit D to the Complaint.

15.     Dash's contends that he directing/ghost directing with Josh Webber (paragraph 13 of Dash Affidavit, Docket No. 38).

16.     Dash contends that he rewrote portions of the script with Josh Webber and Brian White (paragraph 16 of Dash Affidavit, Docket No. 38).

17. Dash does not deny that Muddy's holds the copyright, or that it entered into contracts to all of the workers on the Film, or that it contributed monetary capital to the Film. (paragraph 24 of Dash Affidavit, Docket No. 38).

### III. ARGUMENT

**1. Plaintiff's Motion For Summary Judgment Must Be Granted Because Muddy Is The Owner And Dominate Author of the Film**

### I. SUMMARY JUDGMENT STANDARD

Standard for granting Summary Judgment:

This motion seeks summary judgment pursuant to Federal Rules of Civil Procedure 56. A court may grant summary judgment only when the submissions in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See F.R. C. P. 56. "The inquiry performed is the threshold inquiry of determining whether there is the need of a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 485 U.S. 574, 586 (1986). If the opposing party's "evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. However, in determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. At 255. The

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. At 251-52. When the non-moving party bears the burden of proving the claim or defense (as is the case here), the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

**2. Muddy Is The Sole Owner Pursuant To The Registered Copyright**

A certificate of copyright registration is prima facie evidence that the copyright is valid." Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997). The presumption created by the copyright registration, however, is not irrebuttable – it merely places the burden to prove invalidity on the party opposing the registration. Carol Barnhart Inc. v. Economy Cover Corp., 773 F.2d 411, 414 (2d Cir. 1985); *accord* Estate of Burne Hogarth v. Edgar Rice Burroughs Inc., 342 F.3d 149, 166–67 (2d Cir. 2003). That burden may be met by "other evidence in the record [that] casts doubt on" the registration's validity. Fonar Corp., 105 F.3d at 104. Dash is unable to refute the registration.

In addition to having a registered copyright, Muddy paid for the entire production, cast and crew. All the contracts and agreements relating to the film are with Muddy. See Affidavit of Abdullah Muntaser. For these reasons, Plaintiff is entitled to summary judgment.

**3. Dash's Claims Of Being A Joint-Author Is Unsupported By The Facts**

In his Declaration dated February 11, 2019, Dash admits that Muddy does in fact own the film and has registered copyright. Dash claims he is a joint-author of the film via oral agreement with Muddy and other actions he contends he undertook which supports joint authorship. The facts do not support Dash's argument, hence. Muddy is entitled to summary judgement as the sole author and own of the film.

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. 101. A "joint work" "requires each author to make an independently copyrightable contribution" to the disputed work. Ashton-Tate Corp. v. Ross, 916 F.2d 516, 521 (9th Cir. 1990).

Two or more contributors to a work are "joint authors" if each "(1) made independently copyrightable contributions to the work; and (2) *fully intended* to be co-authors." Thomson v. Larson, 147 F.3d 195, 200 (2d Cir. 1998)(emphasis added).   This intent requirement is important for situations such as when an editor provides helpful suggestions to a writer with the intent that those edits are incorporated into the final product. Childress v. Taylor, 945 F.2d 500, 507 (2d Cir. 1991).  While both parties intend that those edits be merged into inseparable parts of a unitary whole, very few, if any, would expect that the editor would be accorded the status of joint author.  Id.  In order to distinguish relationships like that of a writer and editor from that of true joint authors, the court must consider whether the parties intended to be joint authors.  Id.  "[T]he Second Circuit has declined to define explicitly what sorts of proof are necessary to show joint intent, perhaps because the test of co-authorship intent will vary depending on the specific factual circumstances." Caffey v. Cook, 409 F. Supp. 2d 484, 499 (S.D.N.Y. 2006) (quoting Thomson, 147 F.3d at 201 n.16).

**4. Muddy Did Not Intend To Be Joint-Authors With Dash**

Muddy is the owner of a registered copyright that was filed in 2017, United States Copyright Office, registration number PAu003842822. Clearly Muddy did not consider Dash to be a joint author or Muddy would have identified Dash on the copyright registration in 2017. The copyright registration identifies Muddy as an "employer for hire". Furthermore, as evidenced by Dash's text messages to Josh Webber ("Webber") on January 18, 2019, even Dash did not consider himself an owner of the film, let alone entitled or promised 25 percent ownership. Dash indicated to Webber in the text message that Dash did not believe he (Dash) owned the film at all until he realized the value of the film and informed Webber.. "*now I know what I can get for it*". See Exhibit A to the Affidavit of Webber dated February 12, 2019 (Docket No. 43).

> Webber: Why do you think you "own" the movie
>
> Dash: I didn't feel that way until you guys did this…
> now I know what I can get for it.
> way more than 100 grand

There is no evidence to supporting Dash's contention that the parties intended to be joint authors. The case of <u>16 Casa Duse LLC, v. Alex Merkin, et al</u>, 12-Cv- 3492 (S.D.N.Y, Order dated September 20, 2013) addresses the necessity of the parties to *fully intend* to be joint authors, for joint-authorship to exist. To quote <u>Casa Duse</u>:

> The Second Circuit has not explicitly addressed the scenario
> where, absent a work-for-hire agreement, two parties each made

> more than a minimal contribution to a work and yet did not mutually intend to be co-authors. *See Thomson*, 147 F.3d at 206. Past cases, however, follow a clear pattern. When the Second Circuit finds that there is no mutual intent to be co-authors, it holds that whoever was the "dominant" author is the sole author. *See, e.g.*, *Marshall*, 504 F. App'x at 22 (holding for the creator with "decision-making authority"); *Richard J. Zitz, Inc. v. Pereira*, 225 F.3d 646, 2000 WL 1239830, at *3 (2d Cir. Aug. 21, 2000) (considering the division of labor between the two claimed authors); *Thomson*, 147 F.3d at 202, 206–07 (ruling in favor of the "indisputably . . . dominant author" after determining that the parties lacked mutual intent to be co-authors); *Childress*, 945 F.2d at 508–09 (same); *see also Fisher v. Klein*, No. 86 Civ. 9522 (PNL), 1990 WL 10072477, at *6 (S.D.N.Y. June 26, 1990) ("It is only where th[e] dominant author intends to be sharing authorship that joint authorship will result."), *quoted approvingly by Childress*, 945 F.2d at 508.
>
> Casa Duse page 10.

Dash cannot establish that he a joint author as the parties never intended to joint authors.

Equally important, as a matter of law, Dash is not the "dominant author" of the film. Dash's argument in regards to authorship is already before the Court as indicated in his February 11, 2019 Affidavit. The Court summarized Dash's argument on authorship as follows:

> Dash's sole contention on the issue of authorship is that the parties did, in fact, intend to be co-authors because they reached a "verbal agreement" that provided him with a "25% net interest in the Film's royalties, "which he was to co-own, in perpetuity," in exchange for his serving as a director. (Dash Decl. ¶ 20.) But this allegation does not help his cause, either factually or legally.

Preliminary Injunction Order, February 25, 2019 page 12.

11

In this case, it was Muddy that controlled the project/film, paid the production and post-production, paid the actors, hired the writer and paid the crew which are significant factors in determining co-authorship. See Thomson, 147 F.3d at 203 (noting that billing is a "significant" factor in determining co-authorship intent).  Furthermore, Muddy had decision making authority. Muddy is the dominant author and is legally the sole author.  See Case Duse.  Dash detailed his alleged version of the facts in his February 11, 2019 Affidavit (Docket No. 38), and the facts do not legally establish that Dash as the "dominant author" of the film.   For this reason, Muddy is entitled to summary judgment.

Dash does not dispute the dominance of Muddy. In his Affidavit dated February 11, 2019 at paragraph 24 (Docket No. 38), Dash states as follows:

> "In short, I do not deny that Muddy's holds the copyright, or that it entered into contracts to all of the workers on the Film, or that it contributed monetary capital to the Film."

Furthermore, Dash's statements of directing/ghost directing with Josh Webber (paragraph 13 of Dash Affidavit, Docket No. 38) and rewriting the script with Josh Webber and Brian White (paragraph 16 of Dash Affidavit, Docket No. 38) along with the fact that the Defendants paid for nothing associated with the creation of the film, only establish that the Defendants are not the "dominant author" of the film. Hence, Dash cannot establish that he is the owner or joint author of the film and Muddy is entitled to summary judgment.

### 5. The Alleged Oral Contract Is Unenforceable Under The Statute Of Frauds

Dash argues that he has a verbal contract relating to the film for 25 percent ownership in perpetuity. This argument cannot withstand judicial scrutiny and is unenforceable pursuant to the Statute of Frauds. This Court has previously opined on this matter in this litigation and stated the following in its decision granting Plaintiff's Preliminary Injunction:

> Second, the purported "verbal agreement" that the parties struck – the existence of which Plaintiffs deny – would be unenforceable under New York's statute of frauds. N.Y. Gen. Oblig. Law § 5-701(a)(1). Authorities are legion that oral contracts that provide for the payment of royalties in perpetuity are not enforceable under § 5-701(a)(1). *See, e.g., Baiul v. NBC Sports*, No. 15 Civ. 9920 (KBF), 2016 WL 1587250, at *13 (S.D.N.Y. Apr. 19, 2016), *aff'd sub nom. Baiul v. NBC Sports*, 708 F. App'x 710 (2d Cir. 2017) (alleged oral agreement to pay royalties in perpetuity would violate § 5-701(a)(1)) (citing *Sirico v. F.G.G. Prods., Inc.*, 71 A.D.3d 429, 434 (1st Dep't 2010) ("[A]ny agreement to royalties extending beyond one year must be in writing to satisfy the statute of frauds.")); *see also Melwani v. Jain*, 281 A.D.2d 276,

276–77 (1st Dep't 2001) (holding same). This rule applies even where a party partially performs under a contract, as the doctrine of partial performance does not rescue contracts governed by § 5-701(a)(1). *See, e.g., Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp. PLC*, 93 N.Y.2d 229, 234 n.1 (1999); *Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722, 722–23 (1st Dep't 2003); *Valentino v. Davis*, 270 A.D.2d 635, 637–638 (3d Dep't 2003); *accord Sequoia Healthcare Servs., LLC v. Essex Capital Corp.*, No. 17 Civ. 6640 (NRB), 2018 WL 3392875, at *4 (S.D.N.Y. July 11, 2018); *Vanacore v. Vanco Sales LLC*, No. 16 Civ. 1969 (CS), 2017 WL 2790549, at *4 (S.D.N.Y. June 27, 2017); *Yarusi v. S. Sedghi Inc.*, No. 14 Civ. 7963 (NRB), 2015 WL 4772761, at *6 (S.D.N.Y. Aug. 13, 2015).[5]

See Preliminary Injunction Order dated February 25, 2019 pages 12-13.

For this reason, Muddy is entitled to summary judgment as the alleged verbal contract is unenforceable. has absolute success of the merits in this action.

The case of <u>16 Casa Duse LLC</u>, is erringly similar to the facts of this case. In <u>Merkin</u>, a director of the film without a contract, contends that he owns the filmed despite the fact that he did not pay for the film. The film was paid for by 16 Case Duse LLC. Judge Sullivan ruled that the actions of <u>Merkin</u>, without a contract and without paying for the production, did not render the director an owner or a joint author.

## IV. CONCLUSION

For the reasons stated above, this Court must grant Muddy summary judgment as the sole owner and author of the film "The List" aka "Dear Frank".

|  |  |
|---|---|
|  | JOSH WEBBER and <br> MUDDY WATER PICTURES LLC d/b/a <br> MUDDY WATER PICTURES, INC. <br> By Their Attorneys, <br><br> /s/ Christopher Brown <br> Christopher Brown <br> CB3465 <br> Brown & Rosen LLC <br> Attorneys At Law <br> 100 State Street, Suite 900 <br> Boston, MA 02109 <br> 617-728-9111 (T) |
| Dated: March 17, 2019 | cbrown@brownrosen.com |