USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/8/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JOSH WEBBER, et al.,                          :
                                              :          19-CV-610 (RWL)
                              Plaintiffs,     :
                                              :
             - against -                      :          **ORDER**
                                              :
DAMON ANTHONY DASH, et al.,                   :
                                              :
                              Defendants.     :
----------------------------------------------------- X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        The Court has received confirmation from the central jury trial scheduler that this

case is confirmed for trial beginning on March 24, 2022.  Trial will run March 24, 25, 28,

and 29 (no later).  The final pre-trial conference scheduled for Friday March 18, 2022 at

9:30 am remains as scheduled (via Teams).  The Court also plans to schedule an

additional pretrial conference to discuss jury materials, which are the primary subject of

this order.

        The Court has reviewed and modified the proposed jury instructions and voir dire

the parties submitted (the proposed verdict form will be modified at a later date).  Drafts

are attached to this order.  The parties are directed to review and meet and confer about

these materials and be prepared to discuss them (and the issues identified below) by

**Friday March 11, 2022**.  My Deputy will arrange a Teams conference for that purpose.

        In order to finalize the jury instructions, the Court requires clarification from the

parties on several items.

        1.  Which exclusive rights specifically does Muddy claims to be infringed among

the right to copy, distribute, display, perform, and prepare derivative works?

2.  Will Defendants stipulate to infringement if Muddy is found to be the sole owner of the film? If not, why not?

3.  Do Dash and Poppington claim to be joint authors or instead the dominant and therefore sole authors/owners?

4.  The parties did not include any instructions as to copyright damages.  Do Plaintiffs claim compensatory or statutory damages?  If statutory, do the parties wish to have that amount decided by the jury or the court?

5.  For what purposes is the instruction about willfulness included?  The Court presumes for damages.  If other than that, what for?

6.  Is there evidence to support a limited purpose public figure instruction?  If so, what?

7.  Note the additional instructions re copyright validity and presumption of ownership (14); dominant author (16); and defamation per se (22).

8.  The Court has deleted a separate instruction about defenses to copyright.  The joint/dominant authorship defense is incorporated elsewhere.  The proposed instruction mentioned implied license but included no instruction on that issue, and the Court is not aware of evidence supporting it.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: March 8, 2022
New York, New York

Copies transmitted this date to all counsel of record.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JOSH WEBBER, et al.,

                                    Plaintiffs,

                                                        19 Civ. 0610 (RWL)

                    -against-

DAMON DASH, et al.,

                                    Defendants.
-----------------------------------------------------------------X

**JURY INSTRUCTIONS**

DRAFT March8, 2022

# TABLE OF CONTENTS

A.  Pre-Trial Instructions ................................................................................... 1

    1.  Jury Instruction No. 1 (Introduction to the Case) ...............................................
    2.  Jury Instruction No. 2 (Order of Trial) ................................................................
    3.  Jury Instruction No. 3 (Schedule).......................................................................
    4.  Jury Instruction No. 4 (Juror Conduct) ..............................................................

B.  Pre-Trial (Except No. 5) And Pre-Deliberation Instructions — General ......................

    5.  Jury Instruction No. 5 (Introduction to Deliberations)........................................
    6.  Jury Instruction No. 6 (Impartiality) ...................................................................
    7.  Jury Instruction No. 7 (Jury and Court Function) ...............................................
    8.  Jury Instruction No. 8 (Evidence).......................................................................
    9.  Jury Instruction No. 9 (Evidence—Reasonable Inferences) ..............................
    10. Jury Instruction No. 10 (Direct Evidence and Circumstantial Evidence)............
    11. Jury Instruction No. 11 (Credibility and Weight of Evidence)............................
    12. Jury Instruction No. 12 (Burden of Proof—Preponderance of Evidence) ..........

C.  Pre-Deliberation Instructions — Substantive ...................................................

    13. Jury Instruction No. 13 (Copyright - Introduction) .............................................
    14. Jury Instruction No. 14 (Copyright – Definition and Presumption of Validity) ....
    15. Jury Instruction No. 15 (Copyright – Ownership and Joint Authors) ..................
    16. Jury Instruction No. 16 (Copyright – Dominant Author) ....................................
    17. Jury Instruction No. 17 (Copyright – Elements of Infringement) .......................
    18. Jury Instruction No. 19 (Copyright – Willfulness) ..............................................
    19. Jury Instruction No. 20 (Defamation – Elements) .............................................
    20. Jury Instruction No. 21 (Defamation – Limited Purpose Public Figure) .............

D.  Pre-Deliberation Instructions — Damages .....................................................

    21. Jury Instruction No. 21  (Damages – Defamation)............................................
    22. Jury Instruction No. 22 (Damages – Defamation Per Se)..................................
    23. Jury Instruction No. 23 (Damages – Nominal) ..................................................
    24. Jury Instruction No. 24 (Damages – Punitive) ..................................................

E.  Pre-Deliberation Instructions — Concluding ...................................................

    25. Jury Instruction No. 25 (Duty to Deliberate)......................................................
    26. Jury Instruction No. 26 (Foreperson and Return of Verdict) ..............................

**PRE-TRIAL INSTRUCTIONS**

**Jury Instruction No. 1**
**(Introduction to the Case)**

Members of the jury, we are about to begin the trial of the case that you heard about during jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

As I explained at the beginning of jury selection, this is a civil lawsuit brought by the plaintiffs Josh Webber and Muddy Water Pictures, Inc. against the defendants Damon Anthony Dash and Poppington LLC, doing business as Damon Dash Studios.  Plaintiffs and defendants are sometimes referred to as the parties to the case.  At times, I will refer to the parties individually as Mr. Webber, Muddy Water Pictures, Mr. Dash, and Poppington.  I will also sometimes refer to Mr. Webber and Muddy Water Pictures as the plaintiffs, and Mr. Dash and Poppington as the defendants.

This case involves the making of a movie and the question of who owns rights to the movie.  The movie is known by two names – Dear Frank and The List.  Plaintiff Muddy Water Pictures claims that it is the principal author of the movie, that it owns the exclusive rights to display, copy, and distribute the movie, and that Mr. Dash and Poppington infringed those rights in violation of the United States Copyright Act.  Additionally, Webber and Muddy Waters claim that defendant Dash and Poppington publicized false statements about  Webber and Muddy Water Pictures on social media in violation of law prohibiting defamation.

Defendants Dash and Poppington deny the allegations made against them and contend that they are joint authors of the movie who share ownership of the copyright,

and therefore had the right to display, copy, and distribute the movie.   Dash and Poppington also deny that they defamed Webber and Muddy Water Pictures.

**Jury Instruction No. 2**
**(Order of Trial)**

The case will proceed as follows:

First, the lawyers for each side may make opening statements.  What is said in the opening statements is not evidence but is simply an outline or summary to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, the plaintiffs Josh Webber and Muddy Water Pictures will present evidence in support of their claims, and the lawyers for defendants Damon Dash and Poppington may cross-examine witnesses.  In this case, plaintiffs and defendants intend to call some of the same witnesses, though these witnesses will generally only be called once, for their convenience and yours.

At the conclusion of plaintiffs Webber and Muddy Water Pictures' case, the lawyers for the defendants Dash and Poppington may introduce evidence, and the lawyer for Webber and Muddy Water Pictures may cross-examine any remaining witnesses.

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.  At the end of the trial, you will have to make your decision based on what you recall of the evidence.  I urge you to pay close attention to the testimony as it is given.

**Jury Instruction No. 3**
**(Schedule)**

Let me say a few words about scheduling:

Our trial day will begin at 9:30 a.m. each day and will last until approximately 4:30-5:00 in the afternoon.  We generally will break for lunch somewhere between 12:30 and 1:00.  I also will try to have a short 10 or 15 break or so mid-morning and mid-afternoon.

It is essential that you be on time in the mornings and returning from lunch and breaks.  We cannot start until all of you are here.  If one of you is late, we will have to wait until you arrive.  So, I ask that you all arrive on time.

That said, there may be occasions when I will need you to wait before we resume. Each day, there are various matters concerning the trial that I need to discuss with the lawyers.  I try to do that before and after trial each day, but sometimes it may be unavoidable that those issues may take up more time than expected.  I expect the lawyers to work with me in minimizing any such intrusions into our trial day.

DRAFT March8, 2022

### Jury Instruction No. 4
### (Juror Conduct)

I will address with you a few "dos" and "don'ts":

1.      If you would like, you may take notes during the trial. You have a pad of paper and a pencil or pen for that purpose.  Please write your name on the cover.  Unless instructed to the contrary, the notepad should be left on your seat anytime you leave the courtroom.  Of course, if you prefer not to take notes, that is fine.  But if you do take notes, remember that any notes you take are for your use only, and they are only to be used as an aid to memory.  Your memory controls.  If you do take notes, be careful not to get so involved in taking notes that you are not listening to  or looking at the evidence.  Once you are in deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony.  The controlling record of the evidence is the official court transcript, not any particular juror's notes.

2.      During the course of trial, exhibits will be received into evidence.  They will be marked by exhibit number and will be discussed by the witnesses and/or shown to you.  If there is an exhibit that you are interested in seeing, you can ask to see the exhibit once you are in deliberations.  So, you may find it helpful to write down the exhibit number during trial.

3.      You will not be able to ask questions of the witnesses or their attorneys.  If you have a problem or a particular need, please let our Courtroom Deputy know.

4.      From now and all during the trial you are not to communicate about the case with anyone.  This means that you cannot discuss the case with your co-jurors until the

trial is over and you begin deliberations.  Once you do begin deliberations, you may only discuss the case if all jurors are present.

5.      Other than your co-jurors during deliberations, you are not to communicate about the case with anyone (partner, family, friend, or anyone else) until after the jury has reached its verdict and you have been discharged.  This prohibition also applies to electronic communication.  You may not post any information on the internet or through any other medium about your participation on this jury or about this trial.  This means that you may not use social media or email, tweet, text or use any other form of electronic communication to identify the trial, to disclose the identity of any person involved in the trial, or to disclose the nature of the controversy, what occurs in the trial, or what you or others think about the evidence presented.  Similarly, do not read, watch, or listen to anything reported by the media or press that relates to this case – this includes newspapers, TV, radio, or internet commentary.  If any person asks or tries to contact you about this case, politely but firmly tell them that the judge has directed you not to do so.  If any person does contact you about the case, or if you receive information about the case from any person or through any medium, please provide a note to the Courtroom Deputy, who will pass it on to me.

6.      Also, while you are serving as jurors, please do not have any conversations with the parties, the attorneys, or any witnesses in this case, whether in the courtroom, in the hallways, in the elevator, outside, or anywhere else.  By this, I mean not only to avoid talking about the case; do not talk at all, even to say "good morning" or to acknowledge any of these people.  Someone seeing a juror in conversation with a party, lawyer or witness might think that something improper was being discussed even if it wasn't.  To avoid even the appearance of impropriety, avoid any such contact or conversations.

Similarly, when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude – they are simply following my instruction.

7.     Do not do any research or make any investigation about the case.  Do not consult books, visit sites or search on the internet for information about any party, counsel, witness, event or other information concerning this controversy or trial.  To do so would violate the solemn oath that you took to limit yourself to the evidence presented in the courtroom.

8.     Finally, do not form an opinion about the case until all the evidence is in.  A case can be presented only step-by-step, witness-by-witness, until all the evidence is before you.  Keep an open mind throughout trial.

**PRE-TRIAL (Except No. 5) AND PRE-DELIBERATION INSTRUCTIONS—GENERAL**

**Jury Instruction No. 5**
**(Introduction to Deliberations)**

Members of the jury, we come now to that portion of the trial where you are instructed on the law applicable to the case and you then retire for your final deliberations. You have now heard all the evidence introduced by the parties, and through arguments of their attorneys you have learned the conclusions that each party believes should be drawn from the evidence presented to you.  This charge is divided into roughly two parts: the first part consists of general principles of law applicable to all civil cases; the second part consists of charges directed specifically to the law you must follow in this case.

**Jury Instruction No. 6**
**(Impartiality)**

A lawsuit is a civilized method of determining differences between people.  It is basic to the administration of any system of justice that the decision on both the law and the facts be made fairly and honestly.  As jurors, you are here to administer justice according to the law and the evidence.  You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against the Plaintiffs or the Defendants.

DRAFT March8, 2022

**Jury Instruction No. 7**
**(Jury and Court Function)**

As the jurors, your fundamental duty is to decide, from all the evidence that you have heard and the exhibits that have been submitted, what the facts are.  You are the sole, exclusive judges of the facts: you pass judgment upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

On the other hand, and with equal emphasis, you are required to accept the law as it is given to you in this charge and in any charges that I have given to you during the course of the trial.  Whether you agree with the law as given to you by me or not, you are bound by it.  The process by which you arrive at a verdict is, first, to decide from all of the evidence what the facts are; and second, to apply the law as I give it to you, to the facts as you have decided them to be.  The conclusion thus reached will be your verdict.

DRAFT March8, 2022

## Jury Instruction No. 8
### (Evidence)

The evidence in this case consists of the following:

1.      The sworn **testimony** of the witnesses, regardless of which side called the witness.

2.      The evidence includes all **exhibits** received in evidence, regardless of which party produced the exhibit.  Some exhibits are designated as Plaintiff's exhibits and some as Defendant's exhibits.  That is for administrative purposes, and you should not draw any inference from whether an exhibit is identified as Plaintiff's or Defendant's.

3.      The evidence includes any factual **stipulations** that you must take as true for purposes of this case.  A "stipulation" is an agreement between both sides that a particular fact is true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

4.      Any facts or events I take **judicial notice** of must also be taken as true for purposes of this case, even though no direct evidence has been introduced proving them to be true.  I will let you know if and when I take judicial notice of a fact as true.

5.      **Deposition testimony** may also be received in evidence.  A deposition is a proceeding in which lawyers have the opportunity to question a witness under oath before trial.  Deposition testimony is transcribed by a court reporter so that there is a transcript that can be read from.  Sometimes the parties will also visually record a deposition.   Deposition testimony thus may be read or shown at trial.  Deposition testimony may be accepted, or discounted, by you, subject to the same charges that apply to witnesses testifying in open court.

DRAFT March8, 2022

By contrast, certain things are not evidence and may not be considered by you in reaching a verdict.  These include the following:

1.      Statements, arguments, and questions by the lawyers are not evidence, nor are my own statements to you.

2.      Second, objections by the lawyers are not evidence.  The lawyers have an obligation to their clients to make an objection when they believe evidence offered is improper under the rules of evidence.  The Court's ruling on an objection should not influence you.  If I sustain the objection, then you should ignore the question asked.  If I overrule the objection, then you should treat the answer like any other.

3.      Third, testimony that the Court has stricken or told you to disregard is not evidence and must not be considered.  Sometimes evidence may be admissible for limited purposes.  If I instruct you that an item of evidence is received for a limited purpose only, you must follow that instruction.

4.      Fourth, statements that I may have made concerning the evidence are not evidence.  Nothing that I say or do during the course of the trial is intended to indicate, and should not be taken by you as indicating, what your verdict should be.

5.      Lastly, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

**Jury Instruction No. 9**
**(Evidence – Reasonable Inferences)**

You are to consider only the evidence in the case, but in your consideration of the evidence you are not limited to the testimony and exhibits.  You are permitted to draw reasonable inferences based on facts that you find have been proved.  Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case.  Inferences are not, however, guesswork made without a reasonable basis in the evidence.  In drawing inferences, you should exercise your common sense.  So, while you are considering the evidence presented to you, you are permitted to draw, from the facts you find to be proven, any reasonable inferences that you think are justified in light of your common sense and life experiences.

DRAFT March8, 2022

**Jury Instruction No. 10**
**(Evidence - Direct and Circumstantial)**

You are to consider both direct and circumstantial evidence in reaching your verdict.  One kind of direct evidence is witnesses' testimony about something they know by virtue of their own senses—something they have seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.  There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else then walks in with a raincoat that is also dripping wet.  You cannot look outside the courtroom and see whether or not it is raining, so you have no direct evidence of that fact.  Yet on the combination of the facts I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or the non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

14

**Jury Instruction No. 11**
**(Credibility and Weight of Evidence)**

In deciding what the facts are in this case, you must consider all the evidence that has been offered.   But that does not mean you must accept all evidence as true. You must decide which testimony to believe and which testimony not to believe.  You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You  [will have] [have had] the opportunity to observe the witnesses.  It is your job to decide how believable each witness [is] [was] in his or her testimony.  Your determination of the issue of credibility will depend upon the impression that a witness made upon you as to whether or not that witness was telling the truth or giving you an accurate version of what occurred.  You may choose to disbelieve all or part of any witness's testimony.  Often it is not what a person says but how he or she says it that moves us.  In making that decision, you may take into account any number of factors, including but not limited to the following:

- The witness's opportunity to see, hear, and know about the events he or she described;

- The witness's ability to recall and describe those things;

- The witness's manner in testifying—was the witness candid and forthright or did the witness seem as if he or she was hiding something or being evasive or suspect in some way;

- How the witness's testimony on direct examination compared with the witness's testimony on cross-examination;

- The reasonableness and probability of the witness's testimony in light of other evidence in the case;

- Whether the witness has any possible bias, any relationship to a party, any hostility towards any party, any motive to testify falsely, or any possible interest in the outcome of the trial; and

15

- Whether a witness's testimony was contradicted by his or her other testimony, the testimony of other witnesses, or other evidence.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.  Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit testimony.  In weighing the effects of a discrepancy, you should consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

If you find that any statement made by a witness on the stand is false, in whole or part, you may disregard the particular part you find to be false or you may disregard the witness's entire testimony as not worthy of belief.

It is entirely within your discretion to judge the credibility of each witness, to weigh the relative truth and falsity of each witness's testimony, and to determine the weight to be given to each witness's testimony as a whole.

**Jury Instruction No. 12**
**(Burden of Proof – Preponderance of the Evidence)**

For some aspects of the case, the Plaintiffs, Josh Webber and Muddy Water Pictures have the burden to prove their claim by a preponderance of the evidence.  For other aspects of the case, the Defendants Dash and Poppington have the burden to prove their defense by a preponderance of the evidence.  I will soon instruct you as to who has the burden of proof for specific issues. But first, I will explain what is meant by a preponderance of the evidence.

To establish a claim or defense by a preponderance of the evidence means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means that there is evidence that, when considered and compared with the evidence opposed to it, produces in your minds the belief that what is sought to be proved is more likely true than not true.

A preponderance of the evidence means the greater weight of the evidence.  It does not mean the greater number of witnesses for each side or the greater length of the time taken by either side.  Instead, you must make this determination based on the quality and persuasiveness of the evidence—the weight and effect it has on your minds.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is in balance or evenly divided between the parties—in other words, that it is equally probable that one side is right as it is that the other side is right—or that the evidence produced by the party having

the burden of proof is outweighed by evidence against his or her claim, then you must decide that issue against the party having the burden of proof.  So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof—that what the party claims is more likely true than not true—then the element will have been proved by a preponderance of the evidence.

Some of you may have heard of proof "beyond a reasonable doubt," which is the proper standard in a criminal trial.  That requirement does not apply to a civil case such as this, and you should put it out of your mind.

**PRE-DELIBERATION INSTRUCTIONS—SUBSTANTIVE**

**Jury Instruction No. 13**
**(Copyright – Introduction)**

As I mentioned earlier, one of the claims the Plaintiffs make in this case concerns the law of copyright.  Muddy Water Pictures claims sole ownership of the copyright in the film Dear Frank, also known as The List.  Muddy Water Pictures claims that defendants Dash and Poppington infringed Muddy Water Pictures' copyright in the film.  As a defense, Dash and Poppington claim that they are joint authors of the film along with Muddy Water Pictures and therefore did not violate Muddy Water Pictures' rights.  I will now instruct you about relevant aspects of copyright law.

**Jury Instruction No. 14**
**(Copyright – Definition and Presumption of Validity)**

Copyright refers to the exclusive legal rights given to a person or entity who owns an original expressive work that is not merely a fact or idea.  A copyrighted work can take several forms such as a literary work, musical work, and others.  In this case, the type of work at issue is a motion picture film – in other words, a movie.

The owner of a copyright has the right to exclude any other person from copying, distributing, performing, displaying, or preparing derivative works from the copyrighted work.

Copyright protection automatically attaches to a work the moment the work is fixed in a tangible medium of expression, such as writing on a page, a painting on a canvas, or, in this case, a movie on film.  An owner of a copyright may, if they wish to, apply to register a copyright with the United States Copyright Office in Washington, D.C. Registering a copyrighted work provides the owner with certain benefits, including the ability to sue to enforce the copyright against violation of the copyright, which is known as infringement.

In this case, Muddy Water Pictures registered the film with the Copyright Office. That registration and the information in it are presumptively valid.  The registered copyright for the film identifies Muddy Water Pictures as the owner of the copyright. Muddy Water Pictures therefore is presumed to be the owner of the copyright for the film.

20

**Jury Instruction No. 15**
**(Copyright — Ownership and Joint Authors)**

Only owners of a copyright can enforce rights in the copyrighted work.  A copyright owner is a person or entity that originated the work, or a person or entity to whom the copyright was assigned, meaning that the initial owner transferred ownership to a new owner.  A copyright may be owned by more than one person.

One way that copyright ownership may be shared is if the work is a joint work, meaning that it is created by two or more authors.  In this case, Muddy Water Pictures claims that it is the dominant author and sole owner of the film at issue.  As I said earlier, the copyright registration for the film provides Muddy Water Pictures with a presumption that it is the owner of the copyright in the film.  Dash and Poppington, however, claim that they are the dominant author and sole owner, or at least joint authors along with Muddy Water Pictures.  Joint authors each own rights in a copyrighted work and therefore neither author can claim infringement by a co-author.

In this case, Dash and Poppington have the burden to rebut the presumption that Muddy Water Pictures is the sole owner and show instead by a preponderance of the evidence that Dash and Poppington are the dominant author and sole owner, or at least joint authors and owners, of the copyright in the film.

A joint work is one that is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." For there to be joint authorship,

1. Each author must have created and contributed some amount of original expression even if those contributions are not equal; and

2.  Each author must have intended that his contribution be merged into inseparable or interdependent parts of a unitary whole.

While both elements are required, the touchstone of joint authorship is the parties' mutual intent at the time the work is made.  Sometimes the parties will enter into a contract stating their intent to be joint authors.  In this case, there is no such contract.  Accordingly, to determine whether Muddy Water Pictures and Dash-Poppington were co-authors, you may consider whatever evidence you determine is relevant to determining the parties' intent at the time the film was made.  Such evidence may include, for example and without limitation,

1.  The extent to which the parties exercised control over the film;

2.  The extent to which each party entered into contracts with others participating in making the film;

3. Whether the parties intended to be credited or billed as co-authors; and

4. Whether the parties' stated publicly, at the time the film was made, that the film was their shared project.

As I mentioned earlier, the copyright registration for the film creates a presumption that Muddy Water Pictures is the sole author and owner of the copyright in the film. However, if you find that Defendants have rebutted the presumption and shown by a preponderance of the evidence that Muddy Water Pictures and Dash-Poppington each contributed original expression to the film and that they mutually intended to be co-authors, then you must find that they are co-authors.  Alternatively, if you find that Muddy Water Pictures and Dash-Poppington each contributed original expression to the film but that they did not mutually intend to be co-authors, then you will need to consider who as between them is the dominant author.

**Jury Instruction No. 16**
**(Copyright — Dominant Author)**

Where two or more parties each contribute the requisite degree of expression to a work but do not mutually intend to be co-authors, the dominant author of the work is deemed the work's sole author.  So, if you find that the parties did not mutually intend to be co-authors, you will need to determine who is the dominant author as between Muddy Water Pictures on one hand, and Dash and Poppington on the other.  In determining who is the dominant author, you should consider the same factors you considered in assessing whether there was joint authorship – that is, for example, the extent of a party's control over making of the film; which party entered into third-party contracts for making the film; what the parties said to each other or publicly about authorship; and other evidence you deem relevant.

If you find that the parties did not mutually intend to be co-authors, and if you find that Muddy Water Pictures was the dominant author of the film, then you must find that Muddy Water Pictures is the sole owner of the film.  Conversely, if you find that the parties did not mutually intend to be co-authors, and if you find that Dash – Poppington was the dominant author of the film, then you must find that Dash – Poppington is the sole owner of the film.  Again, it is the Defendants Dash and Poppington's burden to rebut the presumption that Muddy Water Pictures is the author of the film and prove instead by a preponderance of the evidence that Dash-Poppington, and not Muddy Water Pictures, is the dominant author.

DRAFT March8, 2022

**Jury Instruction No. 17**
**(Copyright – Elements of Infringement)**

A person or entity who copies, publicly distributes, publicly displays, publicly performs, or prepares derivative works of a copyrighted work without permission from the copyright owner infringes the copyright.

If you find that Muddy Water Pictures is the sole owner of the copyright in the film, then you must determine whether either or both Defendants infringed its exclusive rights in the film.  As the party claiming infringement, Muddy Water Pictures has the burden of proving by a preponderance of the evidence that either Dash or Poppington or both copied, or publicly distributed, publicly displayed, publicly performed, or prepared a derivative work of the film.

To prove that a defendant copied the plaintiff's work, the plaintiff may [must]  show that the defendant had access to the copyrighted work and that there are substantial similarities between the defendant's work and the plaintiff's copyrighted work.

24

**Jury Instruction No. 18**
**(Copyright – Willfulness)**

If you find that either Dash or Poppington infringed Muddy Water Pictures' exclusive rights in the film, you will need to determine whether that Defendant did so willfully.  Willfulness is not a required element of infringement.  Rather, willfulness is a factor taken into account for other issues.  To prove that copyright infringement was willful, Muddy Water Pictures must show either (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, Muddy Water Pictures' rights in the film.

**Jury Instruction No. 19**
**(Defamation – Elements)**

In addition to copyright infringement, Plaintiffs Webber and Muddy Water Pictures claim that Damon Dash and Poppington defamed them by making one or more of the following statements:  (1) they are "con artists"; (2) they "robbed" and/or "stole"; and (3) they "robbed a seven-year-old."  To establish a claim for defamation, each Plaintiff must prove by a preponderance of the evidence:

1.  that the Defendant, Damon Dash or Poppington, made one of the statements to a third party other than Josh Webber or Muddy Waters; and

2.  that that third party reasonably understood that the statement was about Josh Webber or Muddy Waters; and

3.  that the third party reasonably understood the statement to be factually true – that is, that the Plaintiffs were, in fact, "con artists," or did "rob" or "steal" or "rob a seven year old"; and

4.  that the statement that Plaintiffs were "con artists" or did "rob" or "steal" or "rob a seven-year-old" was false; and

5.  that the Defendant, Damon Dash or Poppington, failed to use reasonable care to determine the truth or falsity of the statement.

**Jury Instruction No. 20**
**(Defamation – Limited Purpose Public Figure)**

In evaluating the defamation claim, you must also consider whether either of the Plaintiffs are what is known as a limited purpose public figure.

To be considered a limited purpose public figure, a person must have:

1. Successfully invited public attention to his views in an effort to influence others prior to the incident in question; and

2. Voluntarily injected himself into a public controversy related to the subject matter of the litigation; and

3. Assumed a position of prominence in the public controversy; and

4. Maintained a regular and continuing access to the media to influence the outcome of the public controversy.

The controversy at issue must be a public controversy, not a private controversy. Media attention does not alone transform a private controversy into a public one. A private individual is not transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.

If the Plaintiff alleging defamation is found by you to be a limited purpose public figure, then that Plaintiff has a heightened burden and is required to show that by clear and convincing evidence that the Defendant Damon Dash or Poppington published the statement at issue with actual malice. In other words, if Plaintiff Josh Webber or Muddy Waters is found by you to be a limited purpose public figure, then that Plaintiff must show that that Defendant intentionally or willfully harm the Plaintiff in making the statement.

Clear and convincing evidence is a higher burden of proof than a preponderance of the evidence but less than evidence beyond a reasonable doubt. Evidence is clear

27

and convincing if evidence indicating that the thing to be proved is highly probable or reasonably certain.

DRAFT March8, 2022

**PRE-DELIBERATION INSTRUCTIONS—DAMAGES**

**Jury Instruction No. 22**
**(Damages—Defamation)**

If you find that either Plaintiff Josh Webber or Muddy Waters has proven by a preponderance of the evidence that either Defendant Damon Dash or Poppington defamed that Plaintiff, then you must determine the damages to which that Plaintiff is entitled.  However, you should not infer that either Plaintiff is entitled to recover damages merely because I am instructing you now on the elements of damages.  I am instructing you on damages only so that you will have guidance should you decide that either Plaintiff is entitled to recovery for defamation.

If you find that either Plaintiff has proven defamation by either Defendant, then that Plaintiff is entitled to recover actual damages if that Plaintiff proves both the amount of damages incurred and that the Defendant's wrongful conduct was a substantial factor in causing any of the following:

1.   Actual harm to that Plaintiff's property, business, trade, profession, or occupation, such as actual lost business; or

2.  Expenses that Plaintiff had to pay as a result of the defamatory statement or statements; or

3.  Harm to that Plaintiff's reputation; or

4.  Shame, mortification, or hurt feelings.

29

DRAFT March8, 2022

**Jury Instruction No. 23**
**(Damages—Defamation Per Se)**

If you find, after considering all the evidence presented, that either Plaintiff was defamed by one of the Defendants, but you also find that that Plaintiff has not proven actual damages for harm to reputation or shame, mortification, or hurt feelings, you may still award damages if you find that the defamation is what is known as defamation per se. When there is defamation per se, the Plaintiff, even without presenting evidence of actual damage, is entitled to receive compensation for assumed harm to reputation or shame, mortification, or hurt feelings in whatever amount you find to be reasonable.

Defamation per se includes the following:

1. Statements that imply criminal activity; and

2. Statements that tend to injure a party's trade, occupation or business.

DRAFT March8, 2022

**Jury Instruction No. 24**
**(Damages—Nominal)**

If you find, after considering all the evidence presented, that either Plaintiff was defamed by one of the Defendants, but you also find that that Plaintiff did not incur any compensable harm, then you may award that Plaintiff nominal damages.  Nominal damages are awarded as recognition that a plaintiff's rights have been violated even if they did not incur a compensable harm.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

Nominal damages may not be awarded for more than a token sum, such as one dollar.

DRAFT March 8, 2022

**Jury Instruction No. 25**
**(Damages—Punitive)**

Finally, if you find that either Plaintiff has proven defamation, and you find that the Defendant who committed defamation acted with malice or oppression or fraud, then you may also award punitive damages.  You may award punitive damages, however, only if you find that Josh Webber or Muddy Water Pictures has proven by a preponderance of the evidence that the defendant's defamatory conduct was malicious or reckless.  An act is malicious or reckless if it is done in such a manner and under such circumstances as to reflect utter disregard for the potential consequences of the act on the rights of others.  The purpose of punitive damages is to punish a defendant for shocking conduct and to set an example in order to deter the defendant and others from committing similar acts in the future.

To be clear, you may award punitive damages only in connection with Plaintiffs' defamation claim.  Punitive damages may not be awarded in connection with copyright infringement.  Further, an award of punitive damages is within your discretion; you are not required to award them even if you find Defendants liable for defamation.

## PRE-DELIBERATION INSTRUCTIONS—CONCLUDING

### Jury Instruction No. 26
### (Duty to Deliberate)

You are about to go into the jury room and begin your deliberations.  It is your duty as jurors to consult with one another and to deliberate with a view to reaching agreement.  Each of you must decide the case for yourself, but you should do so only after consideration of the case with your fellow jurors.  You should not hesitate to change an opinion when you are convinced that it is wrong.  Your verdict must be unanimous on each and every question that you must decide.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion that in your good conscience appears to be in accordance with the truth.

In the jury room, you will have access the trial exhibits.  If you want any witness testimony read back, you may also request that.  Please remember that it is not always easy to locate what you might want, so try to be as specific as you possibly can in making your request.

Your requests for testimony—or any other communication with the Court— should be made to me in writing, signed by your foreperson along with the date and time, and given to one of the United States Marshals.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

DRAFT March8, 2022

**Jury Instruction No. 27**
**(Foreperson and Return of Verdict)**

When you retire, you should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you in open court.

I have prepared a special verdict form for you to use in recording your decision. The form is made up of questions concerning the issues in this case. You should answer every question except where the verdict form indicates otherwise.

No inference is to be drawn from the way the verdict sheet is worded as to what the answer should be. The questions are not to be taken as any indication that I have any opinion as to how they should be answered.

Before the jury attempts to answer any question on the verdict form, you should read through the entire verdict sheet, and make sure that everyone understands each question. Before answering the questions, you should deliberate in the jury room and discuss the evidence that relates to the questions being answered. When you have considered the questions thoroughly, and the evidence relating to the questions, you are to record your answers on the verdict sheet. Remember, each answer must be agreed upon by all of you.

After you have reached a verdict, your foreperson will fill in the verdict form, sign and date it, and advise the United States Marshal outside your door that you are ready to return to the courtroom. Upon your return, the verdict will be announced in open court.

Finally, I say this not because I think it is necessary, but because it is the custom in this courthouse: treat each other with courtesy and respect during your deliberations. And see that justice is done, all in accordance with your oath as jurors.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JOSH WEBBER, et al.,

                                        19 Civ. 0610 (RWL)

               Plaintiffs,

                                      **19 Civ. 0610 (RWL)**

          -against-

DAMON DASH, et al.,

               Defendants.
------------------------------------------------------------------X

**JURY VOIR DIRE**

Draft March 1, 2022

## Background

This is a civil, not a criminal, lawsuit.  The plaintiffs Josh Webber and Muddy Water Pictures have asserted claims for copyright infringement and defamation. More particularly, the plaintiffs claim sole ownership in a movie called, Dear Frank, also known as The List.   Webber and Muddy Water Pictures claim that the defendants Damon Dash and Poppington LLC copied, displayed and distributed the film without permission.  In addition, Webber claims that Dash defamed him by making false statements about Webber on the internet.  The defendant, Dash and Poppington, deny the allegations against them.  Dash and Poppington claim that they are joint owners of the movie.  And Dash denies that he made any defamatory statements about Webber.

### TO THE PANEL

### Knowledge Of Parties And Witnesses

1.      Do any of you have any personal **knowledge of the allegations** in the case as I have described them?

2.      Are any of you familiar with the plaintiffs **Josh Webber and Muddy Water Pictures**?

3.      Are any of you familiar with the defendants **Damon Dash and Poppington**?

4.      Have any of you ever **read anything or seen anything** in a newspaper or on television or the internet regarding Josh Webber, Muddy Water

Draft March 1, 2022

Pictures, Damon Dash, or Poppington that may affect your ability to be a fair and impartial juror?

5.     The Plaintiffs Josh Webber and Muddy Water Pictures are represented by **Christopher Brown** of the law firm Brown & Rosen LLC.   Are any of you familiar with Mr. Brown or his law firm?

6.     The Defendants Damon Dash and Poppington are represented by **Natraj Bhushan** of Turturro Law, P.C.  Are any of you familiar with Mr. Bhushan or his law firm?

7.     Are any of you familiar with an entity named **Dame Dash Studios**?

8.     Do any of you know, or have you heard anything about, any of the following individuals who may be **witnesses** in this case, or who may be mentioned during trial?  Their names are:

- •     Marcus Friedlander
- •     Claudia Jordan
- •     Mike Muntaser
- •     Wynton Payne
- •     Columbus Short
- •     Nicholas Turturro
- •     Tony White

## Ability to Follow the Proceedings

9.     Do any of you have any problem hearing or seeing, or any problem reading, speaking or understanding the **English** language?

3

Draft March 1, 2022

10.     Do any you have any **medical**, physical or psychological condition that would make it difficult for you to serve as a juror?

11.     Do any of you have any **specific problems** at home or at work that might interfere with your ability to concentrate on the case during trial?

12.     Trial of this case is expected to last about **4 days**.  Is there any reason you cannot serve on the jury for that period of time?

13.     If selected as a juror, you will be **instructed by me not to talk** to anyone about the case until it is over.  And you will not even be able to speak with other jurors about the case until the trial ends and you and the other jurors begin your deliberations.  Does anyone think they cannot follow that instruction?

**<u>Ability to Render an Impartial Verdict Generally</u>**

14.     Given the nature of the allegations in this case, does anyone believe that he or she could not be a **fair and impartial** juror?

15.     Does anyone believe that they will not be able to **keep an open mind** about this case until hearing all of the evidence, the arguments of both sides and the instructions on the law I will give?

16.     Do any of you have any **religious or ethical beliefs** that would prevent you from passing judgment on another person?

17.     The Plaintiffs in this case include an individual and a business.  Similarly, the Defendants include an individual and a business.  Will anyone's

Draft March 1, 2022

judgment in this trial be affected by the fact that certain parties are **individual**s and other parties are **businesses**?

18.     As a result of any of your **life experiences**, do any of you believe there is anything that would cause you to lean in favor of either the plaintiff or the defendant in this case?

## Ability to Apply the Law as Given by the Court

19.     Under our system of justice, for the claims that are being submitted to a jury, the decisions concerning the facts of the case are the responsibility of the jury, and decisions concerning the law are the responsibility of the Court. Those responsibilities are separate. I may not intrude upon your area of responsibility, and you may not intrude upon mine. At the close of this trial, I will instruct you as to the law that you are to apply and you are required to accept it as stated. With this in mind, do any of you feel that for any reason you may not be willing or may not be able to **apply the law as given by me**?

20.     Do any of you believe that you would not be able to follow my instructions regarding the law to be applied **if you disagreed** with my instructions or felt that the law ought to be something different from what I tell you?

Draft March 1, 2022

21.     I will be instructing you that **sympathy** must not enter into your deliberations – do any of you believe you will not be able to follow that instruction?

## INDIVIDUAL QUESTIONS

### Personal History

22.     What is your **educational** background?

23.     Have you, a family member, or a close personal friend worked in the **entertainment industry**?

24.     How are you presently **employed**?  If retired, how were you employed?

25.     Are you married or in a civil partnership? What does your **spouse/partner** do for a living?

26.     Do you have any grown **children**? What do they do for a living?

27.     How do you learn about the **news**?

28.     Do you watch **television**?  If so, what television shows do you watch?

29.     Do you read for **pleasure**?  What do you **read**?

30.     What **hobbies** or interests do you pursue in your free time?

Draft March 1, 2022

31.     Have you, or has any member of your family or a close personal friend, ever been involved in **a court case** or filed or defended against a claim or lawsuit of any sort?  Did the case end to your (or their) satisfaction?  If not, did you feel that trial was conducted fairly?

32.     Have you ever been a **witness** in a lawsuit before?  What was your experience like?

33.     Have you ever served on a **jury** before?  Did the jury reach a verdict?  What did you think of the experience?

## Copyright and Defamation

34.     Have you, a family member, or close personal friend ever worked on **making a movie**?

35.     Have you, a family member, or close personal friend ever been involved in a **copyright dispute**?

36.     Have you, a family member, or close personal friend ever had a dispute with anyone about **who owned or had rights** to a movie, screenplay, story, picture, or work of art?

37.     Have you, a family member, or close personal friend ever **accused** someone else of making false or **defamatory statements**?

38.     Have you, a family member, or close personal friend ever **been accused** of making false or **defamatory statements** about someone else?

7

Draft March 1, 2022

## **Concluding Questions**

39.     Is there **any matter not covered** by my questions that

should be brought to my attention because it would affect your ability to sit

as a juror in this case and to render an impartial verdict?

40.     Do you know of **any reaso**n why you should not be a juror in

this case?

Dated:  New York, New York
          March __, 2022

SO ORDERED.

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE