UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSH WEBBER, and
MUDDY WATER PICTURES LLC d/b/a
MUDDY WATER PICTURES, INC.,

                    Plaintiffs,

          - against -

DAMON ANTHONY DASH, and
POPPINGTON LLC d/b/a
DAMON DASH STUDIOS,

                    Defendants.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/2024

19-CV-610 (RWL)

**DECISION AND ORDER**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Following trial for copyright infringement and defamation, a jury found in favor of Plaintiffs Josh Webber and Muddy Water Pictures LLC (collectively, "Plaintiffs"). On June 21, 2022, the Court entered an amended judgment against Defendants Damon Anthony Dash ("Dash") and Poppington LLC (collectively, "Defendants") in a total amount of $705,400.00, plus post-judgment interest, and on September 22, 2022, the Court entered a supplemental judgment against Defendants for $117,884.71 in attorney's fees (both judgments collectively, the "Judgment"). Since then, Plaintiffs have sought to enforce and execute on the Judgment without success.[1]

      In aid of execution, Plaintiffs seek to capitalize on Dash's ownership interest in Roc-A-Fella Records, Inc. ("RAF"), a closely held-corporation for which Dash owns one-third of the shares, along with Shawn Carter, a/k/a Jay-Z, and Kareem Burke, who also

---

[1] *See* Dkt. 331, 332 (U.S. Marshal certifying that he has not received any funds, and the Judgment remains unsatisfied).

each own one-third shares in RAF.[2]  None of the RAF shareholders actually have stock certificates; apparently none were issued.[3]  Accordingly, Plaintiffs move for an order requiring RAF to (1) issue Dash a stock certificate representing his one-third interest in the company, and (2) deliver the certificate to the U.S. Marshal or Dash, and, if the latter, for Dash to deliver the certificate to the U.S Marshal, for the purposes of selling Dash's one-third interest in RAF at public auction.[4]  (Dkt. 361.)  Dash does not oppose the motion, but RAF does and has intervened for that purpose.  (*See* Dkt. 354 (granting motion to intervene)).  The specific issue to be resolved is whether Dash's one-third ownership interest in RAF is property that may be executed upon and sold at public auction to satisfy the Judgment.  The Court resolves the issue as set forth below.

---

[2] Declaration of Shawn Carter A/K/A Jay-Z ("Carter Decl."), attached as Exhibit 3 to Affidavit of Chris Brown filed September 6, 2023 at Dkt. 340-2 "(9-6-23 Brown Aff."), Ex. 3 ¶2.  A closely held corporation typically has only a few shareholders.  As defined by the Internal Revenue Service, a "closely held corporation" is a non-personal service corporation that "has more than 50% of the value of its outstanding stock owned (directly or indirectly) by 5 or fewer individuals at any time during the last half of the tax year."  *Internal Revenue Service*, Entities, https://www.irs.gov/faqs/small-business-self-employed-other-business/entities# (last visited Feb. 8, 2024).

[3] *See* 9-6-23 Brown Aff., Ex. 1.

[4] The instant motion was preceded by multiple false starts in which Plaintiffs filed similar motions that the Court denied as deficient.  *See* Dkt. 330 (order denying without prejudice motion for order of sale of Dash's interest in RAF due to failure to file supporting memorandum of law); Dkt. 339 (order denying without prejudice motion to compel sale of Dash's interest in RAF due to failure to follow the procedural rules for enforcing a judgment under New York State law); Dkt. 359 (denying Plaintiffs' motion for reconsideration).

**Background**

The Court presumes the parties' familiarity with the underlying facts and proceedings that led to the Judgment.[5] The facts most relevant to this motion concern RAF and its By-Laws.

RAF was incorporated in 1996.[6] On June 18, 2021, RAF sued Dash, seeking to restrain Dash from selling (in the form of a non-fungible token) Carter's first album, "Reasonable Doubt," for which RAF owns the copyright.[7] On July 16, 2021, RAF adopted by-laws (the "RAF By-Laws" or "By-Laws") at a special meeting of the three RAF shareholders.[8] Carter, by proxy, and Burke voted in favor of approving the RAF By-Laws; Dash objected to the meeting taking place at all and abstained.[9]

Among other provisions, the RAF By-Laws prohibit any shareholder from either voluntarily or involuntarily selling any of their RAF stock without prior written consent of RAF's board of directors:

> Except as provided herein, no shareholder, directly or
> indirectly through a transfer of any equity in itself, merger or
> other reorganization or otherwise, may directly or indirectly

---

[5] *See Webber v. Dash*, No. 19-CV-610, 2022 WL 2751874 (S.D.N.Y. July 14, 2022) (decision determining amount of attorney's fees awarded); *Webber v. Dash*, No. 19-CV-610, 2022 WL 2129025 (S.D.N.Y. June 14, 2022) (decision denying Defendants' post-trial motion addressing punitive damages for defamation); *Webber v. Dash*, No. 19-CV-610, 2021 WL 3862704 (S.D.N.Y. Aug. 30, 2021) (decision denying summary judgment on issue of copyright ownership).

[6] Carter Decl. ¶ 2.

[7] Affidavit of Chris Brown filed August 18, 2023 at Dkt. 333-2 ("8-18-23 Brown Aff.") ¶ 4; Carter Decl. ¶ 3.

[8] Declaration of Paul B. Maslo, filed November 20, 2023 at Dkt. 345 ("Maslo Decl.") Exs. A (RAF By-Laws) and B (minutes of special meeting of RAF shareholders).

[9] Maslo Decl. Ex. B.

> sell, transfer, convey, assign, or otherwise dispose (each a "Transfer") of any stock of the company, whether voluntarily or involuntarily, without the prior written consent of the board of directors. The restrictions on Transfer contained herein relate to a unique asset and will be specifically enforceable.[10]

The RAF By-Laws further provide that any transfer by any shareholder not in accordance with the By-Laws – "including by operation of law" – will be void and of no effect.[11]

### Law Governing Execution On Judgments

Federal courts have the authority to enforce their judgments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution") (internal quotation marks omitted). Pursuant to the Federal Rules of Civil Procedure, a party seeking to execute on a money judgment must comply with the procedure of the state where the court is located, although federal statutory law takes precedence to the extent it applies. Fed. R. Civ. P. 69(a)(1); *Mitchell v. Garrison Protective Services, Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014) (Rule "69(a)(1) provides for enforcement of judgments according to the practice and procedure of the state in which the district court is held"). As this Court is located in New York, the applicable procedure for enforcement of money judgments is found in Article 52 of New York's Civil Practice Law and Rules ("N.Y. C.P.L.R."). *Mitchell*, 579 F. App'x at 21. Plaintiffs' motion invokes in particular N.Y. C.P.L.R. § 5225 and § 5233.

---

[10] RAF By-Laws § 7.02(a).

[11] RAF By-Laws ¶ 7.02(f).

Pursuant to those rules, a money judgment may be enforced against a judgment debtor's personal property. N.Y. C.P.L.R § 5225(a). Such property may include the judgment debtor's "right or share in stock of … a corporation." N.Y. C.P.L.R. §§ 5201(c)(1), (4). However, property is subject to execution only if it is property "which could be assigned or transferred." N.Y. C.P.L.R § 5201(b); *Mitchell*, 579 F. App'x at 21. To aid with execution, the court "may order any person to execute and deliver any document necessary to effect payment or delivery" of property of the judgment debtor. N.Y. C.P.L.R. § 5225(c). Once the sheriff has obtained the judgment debtor's interest in personal property, the sheriff is authorized to sell that interest at public auction. N.Y. C.P.L.R. § 5233.

If property in which the judgment debtor has an interest is not in the judgment debtor's possession, a judgment creditor may commence a special proceeding for a court order requiring the person in possession of the property to deliver the property to the sheriff, or, as here, the U.S. Marshal.[12] N.Y. C.P.L.R. § 5225(b); *Dussault v. Republic of Argentina*, 616 F. App'x 26, 27 (2d Cir. 2015) (§ 5225(b) "creates a remedy for judgment creditors in situations where property of a judgment debtor is in the possession or custody or a third party"). In order to prevail under § 5225(b), the judgment creditor must satisfy

---

[12] Plaintiffs need not proceed by special proceeding. That is because "a party seeking a money judgment against a non-party garnishee may proceed by motion" under Rule 69(a) and "need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469–70 (2d Cir. 2018); *see also Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015) ("the filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues") (internal quotation marks omitted). RAF is a New York corporation, has submitted to the Court's jurisdiction by intervention, and has had the opportunity to fully participate in these proceedings.

two criteria: first, that "the judgment debtor 'has an interest' in the property the creditor seeks to reach"; and second, that either "the judgment debtor is 'entitled to the possession of such property' " or that "'the judgment creditor's rights to the property are superior' to those of the party" currently possessing the property.  *Beauvais v. Allegiance Securities, Inc.*, 942 F.2d 838, 840 (2d Cir. 1991) (quoting C.P.L.R. § 5225(b)).

"A Rule 69(a) turnover proceeding pursuant to N.Y. C.P.L.R. § 5225(b) is treated as a motion for summary judgment."  *Edelson v. Cheung*, No. 20-MC-1995, 2023 WL 2300029, at *3 (E.D.N.Y. March 1, 2023) (citing *Gonzalez v. City of New York*, 127 A.D.3d 632, 633, 8 N.Y.S.3d 290, 291 (1st Dep't 2015) ("It is settled that a special proceeding is subject to the same standards and rules of decision as apply on a motion for summary judgment")); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) (district court "may grant summary relief where there are no questions of fact" in a special proceeding pursuant to FRCP 69(a) and CPLR 5225(b)).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court "may not make credibility determinations or weigh the evidence, and ... must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).

## Discussion

The question at the core of the instant dispute is whether the RAF By-Laws' prohibition on transfer and sale of Dash's one-third ownership interest in shares of RAF

without the consent of RAF's board of directors legally prevents sale of Dash's interest in RAF to satisfy the Judgment.  The answer indisputably is no.

To understand why, the Court begins with what is not in dispute.  RAF does not dispute that Dash owns one-third of the shares in RAF (Carter Decl. ¶2), thus satisfying the first step of the two-step inquiry that the judgment debtor has an interest in the property the creditor seeks to reach.  *See Beauvais*, 942 F.2d 838 at 840.  RAF also does not dispute that a judgment debtor's right or interest in a corporation may be property that can be levied upon to satisfy a judgment as explicitly set forth in the New York rules.  N.Y. C.P.L.R. §§ 5201(c)(1), (4); *see* RAF Mem. at 3 (acknowledging that stock may be property subject to enforcement, depending on the applicable contracts involved).[13]  Nor does RAF contend that Dash is not entitled to possession of his one-third interest.  The second step of the turnover analysis is thereby satisfied as Dash, the judgment debtor, is "entitled to the possession of such property."  *See Beauvais*, 942 F.2d 838 at 840.

Although RAF has not issued actual stock certificates, the Court can direct RAF to issue and deliver documentation reflecting Dash's ownership of one-third of the shares in RAF.[14]  N.Y. C.P.L.R. § 5225(c); *see generally Chemical National Bank of New York v. Colwell*, 132 N.Y. 250, 256 (1892) ("It has been frequently held that [provisions requiring entry of a transfer of ownership on corporate books] are intended solely for protection of the corporation … and do not operate to prevent the passing of the entire title, legal and

---

[13] "RAF Mem." refers to Roc-A-Fella Records, Inc.'s Opposition To Plaintiffs' Motion To Deliver Stock Certificates filed at Dkt. 367.

[14] The same By-Laws on which RAF relies to oppose the instant motion provide that "shares of the corporation shall be represented by certificates … and shall be entered in the records of the corporation as they are issued."  (RAF By-Laws § 7.01.)

7

equitable, in the shares, as between the parties, by the delivery of the certificate, with assignment and power of transfer"). And regardless, even in the absence of any issued stock certificate, a judgment debtor's ownership interest in a corporation can be transferred to and sold at public auction to satisfy a judgment pursuant to court order. Indeed, Dash previously has done exactly that with respect to another closely held corporation. In an action brought by a judgment debtor in New York state court, Dash was required to, and did, assign his 50 percent interest in a closely held corporation to a receiver tasked with selling that interest at a public or private sale. *Kerison & Willoughby Capital, Ltd. v. Dash*, Index No. 155976/2013.[15] The same can be done here with respect to Dash's one-third interest in RAF.

Nonetheless, RAF contends that Dash's one-third interest in RAF is not subject to being turned over to the U.S. Marshal and sold at auction because § 7.02(a) of RAF's By-Laws prohibit and render ineffective all transfers not approved by RAF's board. Sale of Dash's one-third shares of RAF has not been voted upon by the board, and, as a result, RAF argues, Dash's interest in RAF cannot be transferred or assigned as required by N.Y. C.P.L.R § 5201(b).

Under New York law, however, the By-Laws' no-transfer restriction is not enforceable. "In New York certificates of stock are regarded as personal property and are subject to the rule that there be no unreasonable restraint on alienation." *Lam v. Li*, 222 A.D.2d 290, 290, 635 N.Y.S.2d 26 (1st Dep't 1995) (quoting *Rafe v. Hindin*, 29 A.D.2d 481, 484, 288 N.Y.S.2d 662 (2d Dep't 1968), *aff'd* 23 N.Y.2d 759 (1968). In *Rafe*, the

---

[15] *See* Affidavit of Chris Brown filed 11/27/2023 at Dkt. 369-1 ("11-27-23 Brown Aff.") Exs. 1 and 2.

8

Court analyzed the same question presented here: "the validity of a restriction on the transfer of stock in a close corporation without the consent of either all or a stated percentage of the other stockholders or the board of directors of the corporation." 29 A.D.2d at 483. The plaintiff and defendant formed a corporation in which they each owned a stock certificate representing 50 percent of the outstanding stock. *Id.* at 482. A legend on each certificate – signed by the parties – made it non-transferable except to the other stockholder absent written permission from the other stockholder to transfer the stock to a third party.[16] *Id.* The restriction did not include any qualification that consent could not be unreasonably withheld. *Id.* at 483. Encountering financial difficulties, the plaintiff found a prospective buyer for his 50 percent share. *Id.* at 482. The plaintiff first offered to sell his stock to the other stockholder, the defendant, at the same price, but the defendant refused both to buy the stock and to consent to sale of the plaintiff's stock to the prospective purchaser. *Id.* The plaintiff then sued, seeking a judgment declaring void the no-transfer legend and declaring the stock transferrable to a third party without consent of the defendant. *Id*.

The lower court denied the plaintiff's motion for summary judgment. The appellate court, however, reversed and granted the relief requested. *Id.* at 486. The court explained that shares of stock are property, ownership of which "cannot exist in one person and the right of alienation in another" and that "if another has the arbitrary power to forbid a transfer of property by the owner that amounts to annihilation of property." *Id.*

---

[16] That the restriction on transfer in *Rafe* appeared as a legend on the stock certificate and not in the corporation's by-laws is immaterial. *See Rafe*, 29 A.D.2d at 483. As RAF asserts, "[c]aselaw is clear that whether something (including stock) 'could be assigned or transferred' – and thus qualify as 'property' subject to enforcement under CPRL 52 – depends on the provisions in the applicable contracts involved." (RAF Mem. at 3.)

at 484 (citation omitted).  In light of those principles, the court made short work of the no-transfer restriction.  As the court noted, the no-transfer restriction did not include any qualification that consent may not be unreasonably withheld, thus imbuing the defendant with "the arbitrary power to forbid a transfer of the shares of the stock by the plaintiff" and thus "amount[ed] to annihilation of property."  *Id.*  As a result, "[t]he restriction is not only unreasonable, but it is **against public policy and therefore illegal**."  *Id.* at 485 (emphasis added).

Based on those same principles, the court in *Lam* found unenforceable an option agreement that permitted the plaintiff to purchase from the defendant 50 percent of shares of a corporation for only $10, binding the defendant and their heirs, successors, and assigns, with no time limit.  222 A.D.2d at 290.  In invalidating the provision, the court cited *Rafe* and stated that "what the law condemns is, not **a restriction** on transfer … but an effective **prohibition** against transferability itself."  *Id.* at 291 (emphasis in original) (quoting *Allen v. Biltmore Tissue Corp.*, 2 N.Y.2d 534 (1957)).

To similar effect is the New York Court of Appeals decision in *Quinn v. Stuart Lakes Club, Inc.*, 57 N.Y.2d 1003, 457 N.Y.S.2d 471 (1982).  In that case, a corporation was established to operate a club.  *Id.*  at 1003.  The corporate by-laws included a restriction providing that upon death of a club member, that member's share of stock must be returned to the club for cancellation.  *Id.* at 1004.  Eventually, there were only two shareholders in the corporation.  *Id.*  One of them, Quinn, died.  When that happened, the sole surviving member, Crawford, filed an action demanding that the executrices of Quinn's estate surrender Quinn's share of stock pursuant to the by-laws' restriction.  *Id.*  In a brief opinion, the Court of Appeals found "[the restriction] of the corporations by-laws


is ***void as an absolute restraint on power of alienation violative of public policy in this State***." *Id.* at 1005 (emphasis added).  The court thus ordered that the corporation "must transfer the stock to [Quinn's executrix] and record the transfer on the books of the corporation." *Id.*

The case law could not be more clear:  in New York, a corporation's unqualified prohibition on transfer or sale of stock by a shareholder without consent from the board is illegal, against public policy, and void.  Sections 7.02(a) and (f) of the RAF By-Laws is just such a provision.  The restriction prohibits any one of the three shareholders from transferring their stock in the company "without the prior written consent of a [sic] the board of directors."  (By-Laws § 7.02(a).)  That unqualified restriction is like the one in *Rafe* in that there is no qualification that consent will not be unreasonably withheld.  The provision endows the other two stockholders with the arbitrary power to prevent transfer of Dash's ownership interest and  thereby annihilates Dash's property ownership.  There are only three shareholders, which gives the two shareholders other than Dash unrestricted veto power over transfer of Dash's interest.  In other words, Carter and Burke can effectively force Dash to keep his shares and never sell them.

The enactment of the By-Laws demonstrates the point.  RAF was founded in 1996.  (Carter Decl. ¶ 2.)  Yet, the By-Laws at issue were not adopted until 25 years later in 2021 at a special shareholder meeting, convened by telephone, not even a month after RAF sued Dash for his attempt to sell intellectual property rights held by RAF.  The sole purpose of the meeting was to vote on the By-Laws.  They were approved with only the votes of Carter and Burke (comprising a two-thirds majority of RAF stock and voting rights), the two shareholders other than Dash.  (Maslo Decl. Ex. B.)  In short, Carter and

11

Burke engineered enactment of the By-Laws and the no-transfer restriction without Dash.[17]

RAF has not presented any persuasive argument that the no-transfer restriction in § 7.02(a) of its By-Laws is enforceable. In an earlier brief, RAF asserted that "New York courts enforce provisions requiring board approval for the sale of shares in a corporation."[18]  The cases RAF cited, however, are entirely distinguishable.  The restriction in *Barbour v. Knecht*, which involved a building cooperative, expressly provided that consent could not be unreasonably withheld.  296 A.D.2d 218, 220, 743 N.Y.S.2d 483 (1st Dep't 2002).  *Cia Naviera Finaciera Aries, S.A. v. 50 Sutton Place South Owners, Inc.* is inapt because it too involved a building cooperative, for which "New York's Court of Appeals requires courts to apply the business judgment rule in evaluating challenges to decisions made by cooperative boards."  510 F. App'x 60, 63 (2d Cir. 2013).  The same is true of *Del Puerto v. Port Royal Owner's Corp.*, 14 Misc.3d 1214(A), 836 N.Y.S.2d 484 (Sup. Ct. Kings Cnty. 2007), *aff'd* 54 A.D.3d 977, 865 N.Y.S.2d 258 (2008).  RAF apparently realized the inapplicability of those cases to the instant context, having omitted any reference to them in RAF's more recent brief.[19]  (*See generally* RAF Mem.)

---

[17] The fact that Carter and Burke enacted the By-Laws and its no-transfer restriction without Dash's agreement makes the instant case even more compelling than the no-transfer restriction in *Rafe*, where the stockholder seeking to declare the restriction unenforceable previously had agreed to it.  *See* 29 A.D.2d at 482.

[18] Third-Party Roc-A-Fella Records, Inc.'s Opposition To Plaintiffs' Motion To Sell The Assets Of Damon Dash, Dkt. 335, at 2.

[19] RAF also dropped citation of cases from other states to support enforceability of the no-transfer restriction.  In its brief opposing Plaintiffs' motion for reconsideration of one of the Court's earlier decisions addressing the issue, RAF cited cases from Massachusetts, Missouri, Minnesota, and Pennsylvania. *See* Roc-A-Fella Records, Inc.'s Opposition To Plaintiffs' Motion To Reconsider Docket Entry 339 ("RAF Recon. Mem."), Dkt. 344, at 2, 6  (citing *Bass River Tennis Corp. v. Barros*, 2021 WL 2201236, at *3 (Mass. App. Ct.

By way of footnote, RAF contends that Plaintiffs do not have standing to argue that RAF's By-Laws are unenforceable.  (RAF Mem. at 4 n.2.)  The authority cited by RAF for that proposition is again inapt.  RAF quotes *Stolow v. Greg Manning Auctions, Inc.* as stating that "[t]he bylaws of a corporation constitute a contract between a corporation and its members. … A third-party, who is not a member of the association or corporation nor a party to the bylaws, lacks standing to bring suit against an organization for violation of its bylaws."  258 F. Supp.2d 236, 249 (S.D.N.Y. 2003), *aff'd*, 80 F. App'x 722 (2d Cir. 2003).  But Plaintiffs did not bring a suit against RAF for violation of the By-Laws; rather, Plaintiffs filed a motion as judgment creditors against Defendants as judgment debtors, and RAF intervened and asserted its By-Laws as a basis for the Court to deny the relief sought by Plaintiffs.  Plaintiffs responded to that argument by explaining why the By-Laws are not an impediment to turnover and sale of Dash's interest in RAF.  There is no lack of standing.[20]

Lastly, RAF has argued that permitting a public sale of Dash's ownership interest without approval by RAF's board would undermine the goals of protecting the corporation

---

2021); *Witte v. Beverly Lakes Investment Co.*, 715 S.W.2d 286, 292 (Mo. Ct. App. 1986); *Castonguay v. Castonguay*, 306 N.W.2d 143, 145-46 (Minn. 1981); *Rouse & Associates, Inc. v. Delp*, 658 A.2d 1383, 1385 (Pa. Super. 1995)).  All are inapt as none involved New York law.  *See Rafe*, 29 A.D.2d at 483 (recognizing that "[t]here is a conflict of authority in other States" on the issue of restrictions on transfers of stock in close corporations).  The cases also are distinguishable as the restrictions at issue applied only to voluntary transfers, not involuntary transfers, such as is at issue here.  *Bass River Tennis* 2021 WL 2201236, at *3; *Witte*, 715 S.W.2d at 294; *Castonguay*, 306 N.W.2d at 146; *Rouse*, 658 A.2d at 1385.

[20] As a response to RAF's efforts to forestall execution, Plaintiffs also argued that RAF violated its By-Laws by failing to issue a stock certificate to Dash.  Plaintiffs did so, however, as a response to RAF's invocation of its By-Laws in the first place.  In any event, to resolve the instant dispute, the Court need not address whether or not RAF violated its own By-Laws.

and forcing the two other shareholders "into a relationship with a third party whose interests may not be aligned." (RAF Recon. Mem. at 7.) The two other shareholders, however, could have pre-empted that concern by adopting a no-transfer restriction subject to consent that would not be unreasonably withheld; or, they could have required that they be given a right of first refusal to purchase Dash's shares. Even now, they can readily address their concern without enforcing a no-transfer restriction that is contrary to New York law. They can participate in the auction and place the winning bid.

## Conclusion

To the extent not addressed above, the Court has considered the parties' arguments and found them to be moot or without merit. For the foregoing reasons, the Court grants Plaintiffs' motion and orders as follows:

1. Section 7.02(a) of the RAF By-Laws is unenforceable.

2. Within 21 days of entry of this order, RAF shall turn over to counsel for Dash a certificate representing Dash's ownership of one-third of the shares in RAF (the "Dash Ownership Interest").

3. Within 10 days of receiving the certificate of the Dash Ownership Interest, Dash, through counsel, shall turn over to the U.S. Marshal for the Southern District of New York (i) a fully-executed assignment (the "Assignment") that assigns to the U.S. Marshal all right, title, and interest in and to the Dash Ownership Interest, and (ii) any certificate issued by RAF evidencing the Dash Ownership Interest.

4. Within 180 days of the U.S. Marshal's receipt of the Dash Ownership Interest and any corresponding certificate, the Marshal shall sell the Dash Ownership Interest at public auction.

5. Following completion of the auction sale, the U.S. Marshal shall deliver (i) to Plaintiffs, proceeds of the sale in an amount not to exceed the amount owed pursuant to the Judgment plus post-judgment interest; and (ii) to Dash, proceeds from the sale that exceed the amount owed to Plaintiffs pursuant to the Judgment.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2024
         New York, New York