RECEIVED
SDNY PRO SE OFFICE
2024 DEC -6 PM 3:54

**U.S. Department of Justice**
**United States Marshals Service**

**PROCESS RECEIPT AND RETURN**
See "Instructions for Service of Process by U.S. Marshal"

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Josh Webber, et al | 19-610-RWL |
| DEFENDANT | TYPE OF PROCESS |
| Damon Dash | Sale |

**SERVE AT**
NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
Dame Dash one-third share in Roc-A-Fella Records Inc.
ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
Ink 48 Hotel, 653 11th Ave. (48th Street), New York, NY 10036

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW
Christopher Brown, Brown & Rosen LLC, 100 State Street, 9th Floor, Boston, MA 02109

| | |
|---|---|
| Number of process to be served with this Form 285 | 1 |
| Number of parties to be served in this case | 1 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):

Signature of Attorney other Originator requesting service on behalf of:
☒ PLAINTIFF
☐ DEFENDANT
TELEPHONE NUMBER: 617-697-8212
DATE: 8/20/2024

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE**

I acknowledge receipt for the total number of process indicated. (Sign only for USM 285 if more than one USM 285 is submitted)
Total Process: 4/4
District of Origin No. 054
District to Serve No. 054
Signature of Authorized USMS Deputy or Clerk
Date: 8/23/2024

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☒ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above on the on the individual, company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above (See remarks below)

Name and title of individual served (if not shown above)

Date: 11/14/2024  Time: 10:30 ☒ am ☐ pm

Address (complete only different than shown above)

Signature of U.S. Marshal or Deputy
Okpych 32132

Costs shown on attached USMS Cost Sheet >>

**REMARKS**

Sale was conducted by Deputy Okpych & Deputy Payano, from 8:30A - 10:30A. The item was sold to the credit ~~bidder~~ bidder, NYS Dept. of ~~taxation~~ +finance. NYS Dept. of taxation +finance and NYC Dept. of social services agreed to split the credit bid and share ownership of the property.

Service Fee = $260
Mileage Fee = $11.52
Total fees = $271.52

Commission calculated on $1 million credit bid.
Commission = $15,015.

Form USM-285
Rev. 03/21



**U.S. Department of Justice**

United States Marshals Service

*Southern District of New York*

---

*500 Pearl St. Suite 400*
*New York, NY 10007*

*Telephone (646) 563-9881*

December 3, 2024

United States District Court
Southern District of New York
Attn: Daniel Ortiz, Acting Clerk of Court
500 Pearl Street
New York, NY 10007

<u>Re: United States Marshals Report of Sale</u>

Dear Mr. Ortiz:

      I hereby certify and return that on February 25, 2024, my office received the attached Decision and Order and in accordance therewith, on Thursday, November 14, 2024, at 10:00 am, the property described therein was sold at Public Auction at the Ink 48 Hotel located at 653 11th Ave. (48th street), New York, New York, 10036.

      There were three registered bidders. The highest bid was made by Mr. David Demeter on behalf of the New York State Department of Taxation & Finance in the amount of a credit bid of $1 million. Mr. Demeter and Mr. Gerald Singleton, on behalf of New York City Department of Social Services, agreed to split the $1 million credit bid and share ownership of the 33.3 share of Roc-A-Fella Records Inc. No actual funds were received from the NYC Department of Taxation & Finance or New York City Department of Social Services, since the purchase of the property was made by credit bid only.

      Notice of Sale was published in the Daily News on October 28, 2024.

Sincerely,

Ralph Sozio
United States Marshal

MEMORANDUM OF SALE

On the 14th day of November 2024, David J. Demeter on behalf of New York State Department of Taxation and Finance entered a credit bid of $1,000,000 and won the bidding. NYS Department of Taxation and Finance and NYC Department of Social Services agreed to split the credit bid and share ownership of the property described in the order of sale. The New York State Department of Taxation and Finance and the New York City Department of Social Services have complied with the terms and conditions of sale as set forth in the Notice of Sale by the United States Marshal dated October 22. 2024

Dated: New York, NY

_November 25_, 2024

_____
Signature of Purchaser
NYS Dept. of Taxation + Finance
Bldg 9, W.A. Harriman Campus
Albany, NY 12227
Address

S/ Gerald Singleton
_____
Signature of Purchaser
NYC Law Department
100 Church Street, Room 20-093
New York, NY 10007
Address


Received from _____N/A_____ the sum of

($_____N/A_____), being twenty percent (20%) of

_____N/A_____ dollars, the amount bid by credit bid only for this property

sold me under the order in the above action.

Dated: New York, NY

_December 3rd_, 2024

_____
For Ralph Sozio
United States Marshal
Southern District of New York

# RECORD OF BIDS
## 19 Civ. 610

| BIDDER NAME OR NUMBER | BID AMOUNT |
|---|---|
| 3 | 50,000 |
| (2) | ~~200,000~~ JRP 223,000 |
| 3 | 250,000 |
| (1) | 1 mil |

*credit

Assigned Bidder # __1__

## BIDDER REGISTRATION FORM

19 Civ. 610

Josh Webber, et al vs. Damon Dash

NAME: David Demeter

ADDRESS: 13 Kerry Court

Saratoga Springs, NY 12866

I represent:

NAME: NYS Department of Taxation & Finance

ADDRESS: Bldg. 9 - W.A. Harriman Campus

Albany NY 12227

TELEPHONE NUMBER: 518-457-2070

SIGNATURE: [signature]

DATE: 11/14/24

\* credit

Assigned Bidder # __2__

BIDDER REGISTRATION FORM

19 Civ. 610

Josh Webber, et al vs. Damon Dash

NAME: GERALD E. SINGLETON

ADDRESS: NYC LAW DEPARTMENT 100 CHURCH STREET, New York NY 10007

I represent:

NAME: NYC Dept. of Social Services

ADDRESS: 100 CHURCH STREET, New York NY 10007

TELEPHONE NUMBER: (917) 734-7906

SIGNATURE: [signature]

DATE: 12/14/2024

*"credit"

Assigned Bidder # __3__

# BIDDER REGISTRATION FORM

## 19 Civ. 610

## Josh Webber, et al vs. Damon Dash

NAME: _Chris Brown_

ADDRESS: _Brown & Rosen LLC_

_100 State Street, 9th Floor Boston, MA 02109_

I represent:

NAME: _Muddy Waters Pictures, Josh Webber, EV Brock, Christopher Brown, Monique Bunn_

ADDRESS: _100 State Street, 9th Floor, Boston, MA 02109_

TELEPHONE NUMBER: _617-657-8212_

SIGNATURE: _[signature]_

DATE: _11-14-24_

# DAILY☉NEWS

NYDAILYNEWS.COM

Sold To:
Brown and Rosen LLC - CU80183786
100 State Street Suite 900
Boston, MD 02109

Bill To:
Brown and Rosen LLC - CU80183786
100 State Street Suite 900
Boston, MD 02109

## Affidavit of Publication

Order Number: 7717048
Purchase Order:

State of New York
County of New York

The undersigned is an authorized designee of the publisher of the Daily News, a daily newspaper published in New York, New York. The notice, of which the annexed is a true copy, has been published in the said newspaper in the Full Run zone on the following days:

Publication Dates : **Oct 28, 2024**.

Daily News, L.P., Publisher

*[signature]*

Printed Name:   **Peter Nylin**

Authorized Designee of Daily News, L.P., Publisher of the Daily News

Sworn to before me this **29** day of **October** ,**2024**.

*[signature]*

Notary Public

```
KATHI L DAVIS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DA6410130
Qualified in Ulster County
Commission Expires October 19, 2028
```

# DAILY◉NEWS

NYDAILYNEWS.COM

**NOTICE OF SALE BY THE UNITED STATES MARSHAL**

Pursuant to Initial Writ of Execution Issued on May 15, 2022 by the United States District Court in the action Webber v. Dash, 19-Civ-610 (RWL) (S.D.N.Y.)("Lawsuit"), and other judgments and court orders received on behalf of various judgment creditors intervening in the Lawsuit against defendant judgment debtor Damon Dash which have been delivered to me as United States Marshal for the Southern District of New York ("Marshal"), the Marshal or an authorized representative thereof, will sell at public auction, 33.3 shares ("Shares") of Roc-a-Fella Records Inc. ("Company" or "RAF") which is one-third (1/3) of the Company. The Company's major asset is ownership of the master recordings of Shawn ("Jay-Z") Carter's album "Reasonable Doubt". The public auction will occur on November 14, 2024 at 10:00am at the Helvetica Room in the Ink 48 Hotel, 653 11th Ave. (48th Street), New York, NY 10036 and the interest of Damon Dash in RAF will be sold. Please contact and register your appearance to attend via email to Christopher Brown, Esq., Brown & Rosen LLC, 100 State Street, Boston, MA 02109, at cbrown@brownrosen.com. This registration is necessary as the public auction will be filmed for airing for streaming purposes, digital or television distribution. By attending the public auction, all persons agree and consent to having their likeness, voice, image and appearance recorded and displayed by the judgment creditors. I The minimum bid shall be no less than Three Million Three Hundred Thousand Dollars ($3,300,000.00). The judgment creditors may credit bid from the amount of the judgment at the sale and are exempt from the minimum bid requirement. Only the judgment creditors can secure a winning bid that is below the minimum bid requirement by bidding a portion or all of the credit of the judgment(s). For bidding purposes, any potential purchaser must register with the Marshal the day of the auction to take part in the auction. Representatives of corporate and individual bidders are permitted to bid as authorized agents of a company or individual.

With the exception of the judgment creditors, a deposit equal to twenty percent (20%) of the minimum bid, totaling Six Hundred and Sixty Thousand Dollars ($660,000.00) to purchase the Shares must be paid by the purchaser by certified or bank check made payable at the time and place of the sale to the "United States Marshal for the Southern District of New York" for which the United States Marshal or his representative will give a receipt, the day of the public auction. Prior to bidding, the certified funds shall be presented to the Marshal in order to obtain permission and a number to bid from the Marshal.

The balance of the funds to purchase the Shares must be paid by certified bank check made payable to the "United States Marshal for the Southern District of New York" and delivered to the U.S. Marshal at his office, United States 2 Courthouse, 500 Pearl Street, Fourth Floor, New York, NY 10006, within fourteen (14) days from date of the sale. After receipt of the purchase price, the United States Marshals Service will execute a transfer deed to the Shares conveying the Shares to the purchaser. Failure to pay the balance of the funds to purchase the Shares within fourteen (14) days of the date of the sale, will result in forfeiture of the deposit to Josh Webber and Muddy Water Pictures.

Dated: October 22, 2024
RALPH SOZIO
United States Marshal for the Southern District of
New York

# **NOTICE OF SALE BY THE UNITED STATES MARSHAL**

Pursuant to initial Writ of Execution issued on May 15, 2022 by the United States District Court in the action Webber v. Dash, 19-Civ-610 (RWL) (S.D.N.Y.)("Lawsuit"), and other judgments and court orders received on behalf of various judgment creditors intervening in the Lawsuit against defendant judgment debtor Damon Dash which have been delivered to me as United States Marshal for the Southern District of New York ("Marshal"), the Marshal or an authorized representative thereof, will sell at public auction, 33.3 shares ("Shares") of Roc-a-Fella Records Inc. ("Company" or "RAF") which is one-third (1/3) of the Company. The Company's major asset is ownership of the master recordings of Shawn ("Jay-Z") Carter's album "Reasonable Doubt".

The public auction will occur on November 14, 2024 at 10:00am at the Helvetica Room in the Ink 48 Hotel, 653 11th Ave. (48th Street), New York, NY 10036 and the interest of Damon Dash in RAF will be sold. Please contact and register your appearance to attend via email to Christopher Brown, Esq., Brown & Rosen LLC, 100 State Street, Boston, MA 02109, at cbrown@brownrosen.com. This registration is necessary as the public auction will be filmed for airing for streaming purposes, digital or television distribution. By attending the public auction, all persons agree and consent to having their likeness, voice, image and appearance recorded and displayed by the judgment creditors.

1

The minimum bid shall be no less than Three Million Three Hundred Thousand Dollars ($3,300,000.00). The judgment creditors may credit bid from the amount of the judgment at the sale and are exempt from the minimum bid requirement. Only the judgment creditors can secure a winning bid that is below the minimum bid requirement by bidding a portion or all of the credit of the judgment(s). For bidding purposes, any potential purchaser must register with the Marshal the day of the auction to take part in the auction. Representatives of corporate and individual bidders are permitted to bid as authorized agents of a company or individual.

With the exception of the judgment creditors, a deposit equal to twenty percent (20%) of the minimum bid, totaling Six Hundred and Sixty Thousand Dollars ($660,000.00) to purchase the Shares must be paid by the purchaser by certified or bank check made payable at the time and place of the sale to the "United States Marshal for the Southern District of New York" for which the United States Marshal or his representative will give a receipt, the day of the public auction. Prior to bidding, the certified funds shall be presented to the Marshal in order to obtain permission and a number to bid from the Marshal.

The balance of the funds to purchase the Shares must be paid by certified bank check made payable to the "United States Marshal for the Southern District of New York" and delivered to the U.S. Marshal at his office, United States

2

Courthouse, 500 Pearl Street, Fourth Floor, New York, NY 10006, within fourteen (14) days from date of the sale. After receipt of the purchase price, the United States Marshals Service will execute a transfer deed to the Shares conveying the Shares to the purchaser. Failure to pay the balance of the funds to purchase the Shares within fourteen (14) days of the date of the sale, will result in forfeiture of the deposit to Josh Webber and Muddy Water Pictures.

Dated: October 22, 2024

_____
RALPH SOZIO
United States Marshal for the Southern District of New York

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/13/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X
JOSH WEBBER, and
MUDDY WATER PICTURES LLC d/b/a
MUDDY WATER PICTURES, INC.,

                Plaintiffs,

- against -

DAMON ANTHONY DASH, and
POPPINGTON LLC d/b/a
DAMON DASH STUDIOS,

                Defendants.
————————————————————X

19-CV-610 (RWL)

**DECISION AND ORDER**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Following trial for copyright infringement and defamation, a jury found in favor of Plaintiffs Josh Webber and Muddy Water Pictures LLC (collectively, "Plaintiffs"). On June 21, 2022, the Court entered an amended judgment against Defendants Damon Anthony Dash ("Dash") and Poppington LLC (collectively, "Defendants") in a total amount of $705,400.00, plus post-judgment interest, and on September 22, 2022, the Court entered a supplemental judgment against Defendants for $117,884.71 in attorney's fees (both judgments collectively, the "Judgment"). Since then, Plaintiffs have sought to enforce and execute on the Judgment without success.[1]

In aid of execution, Plaintiffs seek to capitalize on Dash's ownership interest in Roc-A-Fella Records, Inc. ("RAF"), a closely held-corporation for which Dash owns one-third of the shares, along with Shawn Carter, a/k/a Jay-Z, and Kareem Burke, who also

---

[1] See Dkt. 331, 332 (U.S. Marshal certifying that he has not received any funds, and the Judgment remains unsatisfied).

## Background

The Court presumes the parties' familiarity with the underlying facts and proceedings that led to the Judgment.[5] The facts most relevant to this motion concern RAF and its By-Laws.

RAF was incorporated in 1996.[6] On June 18, 2021, RAF sued Dash, seeking to restrain Dash from selling (in the form of a non-fungible token) Carter's first album, "Reasonable Doubt," for which RAF owns the copyright.[7] On July 16, 2021, RAF adopted by-laws (the "RAF By-Laws" or "By-Laws") at a special meeting of the three RAF shareholders.[8] Carter, by proxy, and Burke voted in favor of approving the RAF By-Laws; Dash objected to the meeting taking place at all and abstained.[9]

Among other provisions, the RAF By-Laws prohibit any shareholder from either voluntarily or involuntarily selling any of their RAF stock without prior written consent of RAF's board of directors:

> Except as provided herein, no shareholder, directly or indirectly through a transfer of any equity in itself, merger or other reorganization or otherwise, may directly or indirectly

---

[5] See Webber v. Dash, No. 19-CV-610, 2022 WL 2751874 (S.D.N.Y. July 14, 2022) (decision determining amount of attorney's fees awarded); Webber v. Dash, No. 19-CV-610, 2022 WL 2129025 (S.D.N.Y. June 14, 2022) (decision denying Defendants' post-trial motion addressing punitive damages for defamation); Webber v. Dash, No. 19-CV-610, 2021 WL 3862704 (S.D.N.Y. Aug. 30, 2021) (decision denying summary judgment on issue of copyright ownership).

[6] Carter Decl. ¶ 2.

[7] Affidavit of Chris Brown filed August 18, 2023 at Dkt. 333-2 ("8-18-23 Brown Aff.") ¶ 4; Carter Decl. ¶ 3.

[8] Declaration of Paul B. Maslo, filed November 20, 2023 at Dkt. 345 ("Maslo Decl.") Exs. A (RAF By-Laws) and B (minutes of special meeting of RAF shareholders).

[9] Maslo Decl. Ex. B.

Pursuant to those rules, a money judgment may be enforced against a judgment debtor's personal property. N.Y. C.P.L.R § 5225(a). Such property may include the judgment debtor's "right or share in stock of ... a corporation." N.Y. C.P.L.R. §§ 5201(c)(1), (4). However, property is subject to execution only if it is property "which could be assigned or transferred." N.Y. C.P.L.R § 5201(b); *Mitchell*, 579 F. App'x at 21. To aid with execution, the court "may order any person to execute and deliver any document necessary to effect payment or delivery" of property of the judgment debtor. N.Y. C.P.L.R. § 5225(c). Once the sheriff has obtained the judgment debtor's interest in personal property, the sheriff is authorized to sell that interest at public auction. N.Y. C.P.L.R. § 5233.

If property in which the judgment debtor has an interest is not in the judgment debtor's possession, a judgment creditor may commence a special proceeding for a court order requiring the person in possession of the property to deliver the property to the sheriff, or, as here, the U.S. Marshal.[12] N.Y. C.P.L.R. § 5225(b); *Dussault v. Republic of Argentina*, 616 F. App'x 26, 27 (2d Cir. 2015) (§ 5225(b) "creates a remedy for judgment creditors in situations where property of a judgment debtor is in the possession or custody or a third party"). In order to prevail under § 5225(b), the judgment creditor must satisfy

---

[12] Plaintiffs need not proceed by special proceeding. That is because "a party seeking a money judgment against a non-party garnishee may proceed by motion" under Rule 69(a) and "need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469–70 (2d Cir. 2018); *see also Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015) ("the filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues") (internal quotation marks omitted). RAF is a New York corporation, has submitted to the Court's jurisdiction by intervention, and has had the opportunity to fully participate in these proceedings.

5

without the consent of RAF's board of directors legally prevents sale of Dash's interest in RAF to satisfy the Judgment. The answer indisputably is no.

To understand why, the Court begins with what is not in dispute. RAF does not dispute that Dash owns one-third of the shares in RAF (Carter Decl. ¶2), thus satisfying the first step of the two-step inquiry that the judgment debtor has an interest in the property the creditor seeks to reach. See Beauvais, 942 F.2d 838 at 840. RAF also does not dispute that a judgment debtor's right or interest in a corporation may be property that can be levied upon to satisfy a judgment as explicitly set forth in the New York rules. N.Y. C.P.L.R. §§ 5201(c)(1), (4); see RAF Mem. at 3 (acknowledging that stock may be property subject to enforcement, depending on the applicable contracts involved).[13] Nor does RAF contend that Dash is not entitled to possession of his one-third interest. The second step of the turnover analysis is thereby satisfied as Dash, the judgment debtor, is "entitled to the possession of such property." See Beauvais, 942 F.2d 838 at 840.

Although RAF has not issued actual stock certificates, the Court can direct RAF to issue and deliver documentation reflecting Dash's ownership of one-third of the shares in RAF.[14] N.Y. C.P.L.R. § 5225(c); see generally Chemical National Bank of New York v. Colwell, 132 N.Y. 250, 256 (1892) ("It has been frequently held that [provisions requiring entry of a transfer of ownership on corporate books] are intended solely for protection of the corporation ... and do not operate to prevent the passing of the entire title, legal and

---

[13] "RAF Mem." refers to Roc-A-Fella Records, Inc.'s Opposition To Plaintiffs' Motion To Deliver Stock Certificates filed at Dkt. 367.

[14] The same By-Laws on which RAF relies to oppose the instant motion provide that "shares of the corporation shall be represented by certificates ... and shall be entered in the records of the corporation as they are issued." (RAF By-Laws § 7.01.)

7

Court analyzed the same question presented here: "the validity of a restriction on the transfer of stock in a close corporation without the consent of either all or a stated percentage of the other stockholders or the board of directors of the corporation." 29 A.D.2d at 483. The plaintiff and defendant formed a corporation in which they each owned a stock certificate representing 50 percent of the outstanding stock. *Id.* at 482. A legend on each certificate – signed by the parties – made it non-transferable except to the other stockholder absent written permission from the other stockholder to transfer the stock to a third party.[16] *Id.* The restriction did not include any qualification that consent could not be unreasonably withheld. *Id.* at 483. Encountering financial difficulties, the plaintiff found a prospective buyer for his 50 percent share. *Id.* at 482. The plaintiff first offered to sell his stock to the other stockholder, the defendant, at the same price, but the defendant refused both to buy the stock and to consent to sale of the plaintiff's stock to the prospective purchaser. *Id.* The plaintiff then sued, seeking a judgment declaring void the no-transfer legend and declaring the stock transferrable to a third party without consent of the defendant. *Id.*

The lower court denied the plaintiff's motion for summary judgment. The appellate court, however, reversed and granted the relief requested. *Id.* at 486. The court explained that shares of stock are property, ownership of which "cannot exist in one person and the right of alienation in another" and that "if another has the arbitrary power to forbid a transfer of property by the owner that amounts to annihilation of property." *Id.*

---

[16] That the restriction on transfer in *Rafe* appeared as a legend on the stock certificate and not in the corporation's by-laws is immaterial. *See Rafe*, 29 A.D.2d at 483. As RAF asserts, "[c]aselaw is clear that whether something (including stock) 'could be assigned or transferred' – and thus qualify as 'property' subject to enforcement under CPRL 52 – depends on the provisions in the applicable contracts involved." (RAF Mem. at 3.)

9

is ***void as an absolute restraint on power of alienation violative of public policy in this State.***" *Id.* at 1005 (emphasis added). The court thus ordered that the corporation "must transfer the stock to [Quinn's executrix] and record the transfer on the books of the corporation." *Id.*

The case law could not be more clear: in New York, a corporation's unqualified prohibition on transfer or sale of stock by a shareholder without consent from the board is illegal, against public policy, and void. Sections 7.02(a) and (f) of the RAF By-Laws is just such a provision. The restriction prohibits any one of the three shareholders from transferring their stock in the company "without the prior written consent of a [sic] the board of directors." (By-Laws § 7.02(a).) That unqualified restriction is like the one in *Rafe* in that there is no qualification that consent will not be unreasonably withheld. The provision endows the other two stockholders with the arbitrary power to prevent transfer of Dash's ownership interest and thereby annihilates Dash's property ownership. There are only three shareholders, which gives the two shareholders other than Dash unrestricted veto power over transfer of Dash's interest. In other words, Carter and Burke can effectively force Dash to keep his shares and never sell them.

The enactment of the By-Laws demonstrates the point. RAF was founded in 1996. (Carter Decl. ¶ 2.) Yet, the By-Laws at issue were not adopted until 25 years later in 2021 at a special shareholder meeting, convened by telephone, not even a month after RAF sued Dash for his attempt to sell intellectual property rights held by RAF. The sole purpose of the meeting was to vote on the By-Laws. They were approved with only the votes of Carter and Burke (comprising a two-thirds majority of RAF stock and voting rights), the two shareholders other than Dash. (Maslo Decl. Ex. B.) In short, Carter and

11

By way of footnote, RAF contends that Plaintiffs do not have standing to argue that RAF's By-Laws are unenforceable. (RAF Mem. at 4 n.2.) The authority cited by RAF for that proposition is again inapt. RAF quotes *Stolow v. Greg Manning Auctions, Inc.* as stating that "[t]he bylaws of a corporation constitute a contract between a corporation and its members. ... A third-party, who is not a member of the association or corporation nor a party to the bylaws, lacks standing to bring suit against an organization for violation of its bylaws." 258 F. Supp.2d 236, 249 (S.D.N.Y. 2003), *aff'd*, 80 F. App'x 722 (2d Cir. 2003). But Plaintiffs did not bring a suit against RAF for violation of the By-Laws; rather, Plaintiffs filed a motion as judgment creditors against Defendants as judgment debtors, and RAF intervened and asserted its By-Laws as a basis for the Court to deny the relief sought by Plaintiffs. Plaintiffs responded to that argument by explaining why the By-Laws are not an impediment to turnover and sale of Dash's interest in RAF. There is no lack of standing.[20]

Lastly, RAF has argued that permitting a public sale of Dash's ownership interest without approval by RAF's board would undermine the goals of protecting the corporation

---

2021); *Witte v. Beverly Lakes Investment Co.*, 715 S.W.2d 286, 292 (Mo. Ct. App. 1986); *Castonguay v. Castonguay*, 306 N.W.2d 143, 145-46 (Minn. 1981); *Rouse & Associates, Inc. v. Delp*, 658 A.2d 1383, 1385 (Pa. Super. 1995)). All are inapt as none involved New York law. *See Rafe*, 29 A.D.2d at 483 (recognizing that "[t]here is a conflict of authority in other States" on the issue of restrictions on transfers of stock in close corporations). The cases also are distinguishable as the restrictions at issue applied only to voluntary transfers, not involuntary transfers, such as is at issue here. *Bass River Tennis* 2021 WL 2201236, at *3; *Witte*, 715 S.W.2d at 294; *Castonguay*, 306 N.W.2d at 146; *Rouse*, 658 A.2d at 1385.

[20] As a response to RAF's efforts to forestall execution, Plaintiffs also argued that RAF violated its By-Laws by failing to issue a stock certificate to Dash. Plaintiffs did so, however, as a response to RAF's invocation of its By-Laws in the first place. In any event, to resolve the instant dispute, the Court need not address whether or not RAF violated its own By-Laws.

5.   Following completion of the auction sale, the U.S. Marshal shall deliver (i) to Plaintiffs, proceeds of the sale in an amount not to exceed the amount owed pursuant to the Judgment plus post-judgment interest; and (ii) to Dash, proceeds from the sale that exceed the amount owed to Plaintiffs pursuant to the Judgment.

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2024
       New York, New York